FILED

MAY 2 6 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAMUEL FRANCO                         :
2838 Alabama Avenue, S.E.             :
Washington, DC 20020,                 :        Civil Action No._____
                                      :
NATHAN FRANCO                         :
2838 Alabama Avenue, S.E.             :
Washington, DC 20020,                 :
                                      :
ALLEN FRANCO                          :
2838 Alabama Avenue, S.E.             :        ACTION INVOLVING REAL PROPERTY
Washington, DC 20020,                 :
                                      :
        and                           :
                                      :
D MART, INC.,                         :
2838 Alabama Avenue, S.E.             :
Washington, DC 20020,                 :
                    Plaintiffs        :
                                      :
        v.                            :        CASE NUMBER 1:05CV01058
                                      :
THE DISTRICT OF COLUMBIA              :        JUDGE: Ricardo M. Urbina
Office of the Mayor                   :
1350 Pennsylvania Avenue, N.W.        :        DECK TYPE: General Civil
Washington, DC 20004,                 :
                                      :        DATE STAMP: 05/26/2005
NATIONAL CAPITAL                      :
REVITALIZATION CORPORATION            :
Serve: Anthony C. Freeman, President  :
2025 M Street, NW, Suite 600          :
Washington, DC 20036,                 :
                                      :
        and                           :
                                      :
RLA REVITALIZATION CORPORATION :
Serve: Anthony C. Freeman, President  :
2025 M Street, NW, Suite 600          :
Washington, DC 20036,                 :
                    Defendants.       :

JURY ACTION

1

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION
UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

Plaintiffs, Samuel Franco, Nathan Franco, Allen Franco and D Mart, Inc., by their

attorney herein, allege as and for their complaint against defendants herein as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 in that the

claims hereunder arise directly under the Fifth Amendment of the United States Constitution as

well as under 42 U.S.C. §1983.  Venue is proper under 28 U.S.C. §1391(b).

### PARTIES

2.  Plaintiffs Samuel Franco, Nathan Franco and Allen Franco are adult citizens of the

State of Maryland and are lessees of certain improved real property located at 2834 Alabama

Avenue, SE, Washington, DC 20020 under a valuable lease that, with renewal option, has a

remaining term of more than 5 years.  In addition plaintiff Samuel Franco is the owner of certain

improved real property located at 2838 Alabama Avenue, SE, Washington, DC 20020, which is

adjacent to 2834 Alabama Avenue, and is used in common with the other property.  Both said

properties (collectively the "Property") are located in the Skyland Shopping Center located at the

intersection of Alabama Avenue, Good Hope Road and Naylor Road, S.E., Washington, D.C.

(the Skyland Center").  Plaintiff D Mart, Inc., organized under the laws of the District of

Columbia, owns and operates a retail discount store covering about 22, 000 sq. ft. of floor area,

the entire enclosed area of the Property.  Plaintiffs have operated their business at the Skyland

Center continuously since 1976.

3.  Defendant District of Columbia ("D.C.") is a municipal corporation which is the

government of the District of Columbia.  Defendant D.C. is sued herein both in its executive

2

capacity, including the Mayor of the District of Columbia (the "Mayor"), his agents, and

departments, agencies and entities under his authority, and in its legislative capacity represented

by the Council of the District of Columbia (the "Council").

4. Defendant National Capital Revitalization Corporation ("NCRC") is a municipal

corporation and independent instrumentality of defendant D.C. organized and existing under the

National Capital Revitalization Corporation Act of 1998, D.C. Code Sec. 2-1219.01 *et seq.,* as

amended (the "NCRC Act") Defendant RLA Revitalization Corporation is also an

instrumentality of defendant D.C. and is a subsidiary of NCRC ("RLA").

NATURE OF THE ACTION

5. Plaintiffs, lessees and a property and business owner of a retail discount store in the

Skyland Center bring this action for a declaratory judgment and injunctive and other relief

against defendants who seek to acquire plaintiffs' Property by eminent domain for a private use

in violation of plaintiffs' rights under the Fifth Amendment of the United States Constitution.

Defendants D.C. and NCRC have caused the defendant Council to enact a series of legislative

acts that would authorize defendant NCRC to acquire the approximately 11.5 acres of real

property (including plaintiffs' Property) in the Skyland Center plus an additional approximately

5 acres of vacant undeveloped residentially zone land, separately owned and separate from but

adjacent to the Skyland Center (the "Skyland Addition") (collectively with the Skyland Center

the "Skyland Assemblage"). NCRC's objective in this intended acquisition is to transfer and

consolidate ownership of the Skyland Assemblage in defendant NCRC, displace all of the

approximately 25 current businesses in the Skyland Center, demolish all of the improvements,

and clear the site for redevelopment and then sell the Skyland Assemblage to a private developer

comprised of The Rappaport Companies, Harrison-Malone Development, LLC, Marshall

3

Heights Community Development Organization, Inc. and Washington East Foundation, Inc. who would build a new shopping center on the site (the "Skyland Project").

6. In taking their actions complained of herein, defendants D.C. and NCRC have acted under color of law within the meaning of 42 U.S.C. § 1983 and are responsible for the deprivation of plaintiffs' constitutional rights under the Fifth Amendment of the U.S. Constitution.

7. At all times relevant to this action, defendant D.C. acted solely in a governmental capacity under color of law by (i) drafting, funding, urging and otherwise facilitating the enactment of the legislation described in this complaint hereafter, (ii) implementing and facilitating through legislation enacted by the Council, entering into and performing agreements, including providing funds, and (iii) taking other executive action for the purpose of the unconstitutional taking of property and carrying out the Skyland Project, as alleged herein.

8. At all relevant times, defendant NCRC has acted in a governmental capacity under color of law, in (i) promoting, urging and otherwise facilitating the enactment of the legislation described in this complaint designed to facilitate the unconstitutional takings of the Skyland Assemblage alleged hereafter, (ii) proceeding to implement or execute a sustained program of acquiring said real property under the threat of an unconstitutional taking by eminent domain, and (iii) carrying out the Skyland Project.

9. The Skyland Center is an approximately 11.5 acre shopping center located at the intersection of Alabama Avenue, Good Hope Road, and Naylor Road, S.E. in the District of Columbia. Upon information and belief, Skyland Center has been continuously in operation for more than fifty years, has been fully leased for at least the last five years, and many of the approximately 25 business tenants have long-term leases. The present tenants include regional

4

and national retailers, as well as a variety of neighborhood businesses, and serve the day to day retail needs of the community. In addition, at all relevant times the U.S. Postal Service has operated the Anacostia Post Office at the Skyland Center and defendant D.C. has provided and now provides certain municipal employment services in facilities they each lease at the Skyland Center.

10. Upon information and belief, at all relevant times the Skyland Center and all of the business properties located thereon have been and now are substantially in compliance with applicable laws and regulations, including, among other things, applicable building and health codes, and the Skyland Center is not (and is not located in) a slum area, blighted area, redevelopment area or project area within the meaning of the NCRC Act or any other District of Columbia law or regulation.

11. Upon information and belief, the 5 acre Skyland Addition has never been part of the Skyland Center, has no functional relationship to it, and is not (and is not located in) a slum area, blighted area, redevelopment area or project area within the meaning of the NCRC Act or any other District of Columbia law or regulation. Upon information and belief, defendants NCRC and D.C. have included the Skyland Addition in the Skyland Assemblage and the Skyland Project solely in an attempt to provide enough anticipated parking space required to make the Skyland Project, a private use, feasible. Upon information and belief, the Skyland Project is not feasible.

12. Plaintiffs have suffered and will continue to suffer substantial injury to their constitutionally protected property, being their leasehold and ownership interests in the Property. Said injury is proximately caused by the enactment, as well as the application to plaintiffs and

5

their Property of certain legislation of defendant D.C. and defendants NCRC's and D.C.'s actions pursuant thereto in carrying out the Skyland Project as alleged herein.

13. The legislation in question is a series of related enacted bills concerning the Skyland Assemblage (collectively the "Skyland Legislation"). The enactment, application and implementation of this legislation is unconstitutional and unlawful in at least the following respects:

(a) the legislation would unconstitutionally take plaintiffs' Property for a private use, the Skyland Project, and not for a public use;

(b) the permanent portion of the legislation contains false and pretextual findings and was enacted in violation of the D.C. Home Rule Act and the Council rules thereunder and would unconstitutionally deprive plaintiffs of their Property without due process of law.

(c) the legislation does not state the public purpose or use for which plaintiffs' Property or any of the Skyland Assemblage is to be taken and is unconstitutionally vague;

(d) the legislation was enacted as emergency and temporary legislation in violation of the D.C. Home Rule Act, D.C. Code Sec.1-204.12 and in violation of Council rules; and

(e) the legislation was enacted and is being implemented by defendants D.C. and NCRC in violation of the D.C. Environmental Policy Act of 1989 and the regulations thereunder.

14. Defendants D.C. and NCRC have taken and are threatening to take the actions referred to in paragraph 13 above wrongfully, and are thereby depriving plaintiffs of their constitutional rights and their Property, and are threatening to seize plaintiffs' Property and are causing them other immediate harm in their business and subjecting them to uncertainty and loss due to the threatened taking of their Property. Unless said legislation is declared

6

unconstitutional and unlawful, and defendants are temporarily, preliminarily and permanently

enjoined and restrained from implementing any such legislation or otherwise attempting to

acquire plaintiffs' Property or the Skyland Assemblage or any part thereof by eminent domain,

plaintiffs, who are suffering economic and other harm as a result of defendants' actions, will

continue to suffer irreparable harm.

## FACTS COMMON TO ALL COUNTS

15. The first bill proposed as part of the Skyland Legislation is B15-752, entitled the

"National Capital Revitalization Corporation Eminent Domain Clarification and Skyland

Eminent Domain Approval Amendment Act of 2004" (the "Skyland Permanent Act"), which

was introduced in the Council on March 3, 2004. B15-752 would further amend the NCRC Act

with regard to the exercise of defendant NCRC's powers of eminent domain. In addition,

separately and in relevant part, B15-752 declared that, notwithstanding the foregoing

amendments of the NCRC Act, the Council finds that parcels comprising the Skyland

Assemblage "are necessary and desirable for the public use [and] approves the exercise of

eminent domain by the National Capital Revitalization Corporation or the RLA Revitalization

Corporation [of those properties]." B15-752 did not specify any use for such properties, and did

not state any basis for declaring them to be necessary and desirable for the public use.

Defendant Council held a public hearing on B15-752, the Skyland Permanent Act, on April 28,

2004.

16. In a letter dated May 3, 2004, from Theodore N. Carter, President and Chief

Executive Officer of defendant NCRC, to Councilmember Harold Brazil, Chairperson of the

Committee on Economic Development of the Council, confirming testimony he gave at the

April 28, 2004 public hearing, Mr. Carter stated:

7

Second, the amendment ensures that the Skyland project can be undertaken in a timely manner. <u>As I emphasized in my testimony, NCRC will not exercise eminent domain until there is a commitment from an anchor tenant</u>. In addition, eminent domain may not ever be required depending upon the results of the negotiations conducted with the property owners. However, the existing legislation does not specify when the Council needs to approve the exercise of eminent domain. NCRC wanted the Council to authorize the redevelopment of the area and approve this project before acquisition of the Skyland parcels began, not after. We believe that advance approval for this authority will make it more likely that it will never be used. (Emphasis supplied)

No further action on B15-752 was taken until November 3, 2004 as alleged below.

17. A second bill substantially identical to B15-752, B15-829, entitled the "National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Emergency Amendment Act of 2004" ("First Skyland Emergency Act"), was introduced May 4, 2004, one week after the public hearing on B15-752. This legislation would authorize, on an emergency basis, defendant NCRC to exercise eminent domain over the property at the Skyland Assemblage. Like B15-752, the First Skyland Emergency Act did not specify any use for such properties, or any basis for declaring them to be necessary and desirable for the public use. Resolution 15-556, declaring the emergency, stated in part that

(t)he emergency is that site control is a precursor to obtaining firm commitments from retailers, and in order for development to proceed on a timely basis, the NCRC needs to bring to the table all land owners to commence the negotiation process and also to show the commitment of the D.C. government to the project.

The First Skyland Emergency Act was introduced and passed by the Council on May 4, 2004 and was signed by the Mayor of D.C. on May 21, 2004. It took effect on that date and expired 90 days later on August 19, 2004.

8

18. A third substantially identical bill, B15-830, entitled the "National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Temporary Amendment Act of 2004", was also introduced on May 4, 2004, the same day as the First Skyland Emergency Act was introduced, and was passed by the Council and signed by the Mayor on June 23, 2004 as A15-460. After the 30 day Congressional review period, it became law, L15-193, on September 30, 2004 (the "Skyland Temporary Act"). The Skyland Temporary Act had a duration of 225 days and expired May 13, 2005. Like the first two measures, the Skyland Temporary Act did not specify the use for the properties to be taken or the basis for declaring it to be a public use.

19. A fourth substantially identical bill, B15-952, entitled the "National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Congressional Review Emergency Amendment Act of 2004", was introduced on July 12, 2004 and passed as an emergency measure on August 2, 2004 (the "Second Skyland Emergency Act"). Resolution 15-622, which declared the emergency on July 13, 2004, stated, in words virtually identical to those given in Resolution 15-556, the first emergency declaration, that

(t)he emergency circumstances exist because site control is a precursor to obtaining firm commitments from retailers. In order for development to proceed in a timely manner, NCRC needs to bring to the table owners to commence the negotiation process.

As with the prior acts, the Second Skyland Emergency Act also did not specify any purpose or justification as a public use. It took effect on that date, August 2, 2004, and expired on October 31, 2004.

20. Upon information and belief, defendants NCRC and D.C. intended that the Second Skyland Emergency Act be enacted because the Skyland Temporary Act would not take effect, if

9

at all, until after the expiration of the First Skyland Emergency Act. The First and Second Skyland Emergency Acts are essentially identical and the emergency declared for each is the same.

21. B15-752, the Skyland Permanent Act, was revised by the Committee on Economic Development of the Council in substantial respects and was reported out of the Committee on November 3, 2004, during the term of the Skyland Temporary Act, but (a) more than six months after the public hearing on B15-752, and (b) after the expiration of the first and second Skyland Emergency Acts and (c) after certain events occurred as described below. B15-752 was passed by the Council on December 7, 2004 and signed by the Mayor on December 29, 2004. The Skyland Permanent Act, A15-679, became law, L15-286, on April 5, 2005, after the 30 day Congressional review period.

22. Defendants NCRC and D.C. caused the Council to enact another legislative act closely related to, and at the same time as enactment of, the Skyland Permanent Act. That act entitled the Skyland Site Acquisition Support Act of 2004, B15-944, (the "Skyland Support Act") was introduced on July 12, 2004 pursuant to letter dated July 9, 2004 from the Mayor to the Chairman of the Council. The purpose of B15-944 was to authorize the Mayor to transfer up to $2,000,000 to defendant NCRC to pay the cost of acquiring certain parcels of property at the Skyland Center from owners willing to negotiate such a sale to defendant NCRC.

23. The Committee on Economic Development of the Council held a public roundtable on B15-944 on four days' public notice on October 26, 2004. Neither plaintiffs nor any other property owner, tenant or merchant at the Skyland Center attended that public roundtable because of the lack of adequate notice. Upon information and belief, the only attendees were

10

representatives of defendants D.C.(including agents of the Mayor and the Council) and NCRC

and the community supporting the measure, all of whom were given adequate notice of the

roundtable. The Committee approved the measure on November 4, 2004, and it was passed by

the Council on December 7, 2004 the same day as the Skyland Permanent Act. Thereafter, the

Skyland Support Act became law, L15-302, effective April 8, 2005.

24. The foregoing five legislative actions relating to the Skyland Assemblage are

collectively referred to as the Skyland Legislation. Defendants D.C. and NCRC conspired

together to cause the enactment of the Skyland Legislation in the form and sequence alleged

herein for the purpose of (a) enabling NCRC to commence actions leading to the acquisition of

the Skyland Assemblage and the carrying out of the redevelopment of the Skyland Center, the

Skyland Project, at the earliest possible date without there being formal permanent legislation

authorizing such actions in effect and without defendants having the requisite funding to

undertake the Skyland Project, and (b) delaying enactment of B15-752, the Skyland Permanent

Act, to the latest possible date in the Council term ending December 31, 2004 so as to permit the

Council to revise B15-752 in any manner deemed appropriate, without giving any public notice

or hearing on such revisions, to the latest date before enactment.

25. Defendants D.C. and NCRC further conspired together to cause the revision of B15-

752, the Skyland Permanent Act shortly before it was approved by the Council's Committee on

Economic Development in November, 2004 to insert certain findings by the Council, including,

among other things, that the Skyland Center was a "blighting factor" in the community.

Although, prior to B15-752, the NCRC Act already contained a definition of a "blighted area" in

which area NCRC had authority to exercise the power of eminent domain, defendants deemed

that authority inadequate for acquiring the Skyland Assemblage. Instead, defendants caused the

11

Council to revise B15-752 to contain certain legislative findings in a transparent and pretextual attempt to provide such authority satisfactory to defendants. Notwithstanding defendants' objectives, the legislative findings added to B15-752 by the Committee did not include any finding that either the Skyland Center or the Skyland Assemblage is blighted or is a "blighted area" as defined by the NCRC Act, or that it otherwise qualified as an area to be taken by eminent domain under the NCRC Act or any other law.

26. Said legislative findings inserted by the Committee in B15-752 at the behest of defendants D.C. and NCRC were and remain pretextual, wrong, inaccurate, baseless and substantially irrelevant and were inserted at that late date solely in an attempt to give the Skyland Legislation a constitutional basis and distinguish it from certain similar economic development related eminent domain legislation enacted by New London, CT, the constitutionality of which is being reviewed by the U.S. Supreme Court in the case of Kelo v. City of New London, CT, No 04-108, and to attempt to provide a basis for sustaining the constitutionality of B15-752 under established case law. The Supreme Court granted *certiorari* in the Kelo case on September 28, 2004.

27. Further, in a related action filed July 13, 2004 and now pending before this Court, Rumber v. D.C., Civil No. 04-1170 RMU, plaintiffs in that action, certain other property owners and tenants at the Skyland Center, alerted defendants herein to the issues raised by the Skyland Legislation relating to the Kelo case, and to the defective vagueness of the Skyland Legislation. The combination of those events caused defendant D.C. through the Council to revise B15-752, the Skyland Permanent Act, as stated in paragraphs 24 and 25 hereof, without giving public notice or conducting a public hearing on such revised measure and without affording plaintiffs,

12

other interested owners and tenants, or other members of the public an opportunity to comment upon the revised measure before it was presented to and enacted by the full Council in November and December, 2004.

28. The timing and method of processing, revising and enacting B15-752, the Skyland Permanent Act, and B15-944, the Skyland Support Act, were intended by defendants D.C. and NCRC to enable those measures to be enacted at the latest possible date (a) with the least possible knowledge and participation of the public, especially the owners, merchants and tenants located in the Skyland Assemblage, and (b) without disrupting or delaying the actions of the defendants D.C. and NCRC in undertaking to acquire the Skyland Assemblage prior to receiving formal permanent legislative authority and funding.

29. In planning and taking these actions, defendants D.C. and NCRC knew that such revisions of B15-752 and the enactment of B15-944 would be opposed by the persons and entities who would be directly and adversely affected by those actions, including plaintiffs herein, the plaintiffs in <u>Rumber v. D.C.</u>, the other owners, merchants and tenants in the Skyland Assemblage, and the community members who oppose the Skyland Project. In taking these actions, defendants intentionally sought to deprive plaintiffs of their constitutional rights as alleged herein.

30. In furtherance of the Skyland Project and the Skyland Legislation, on May 17, 2004, the Mayor transmitted to the Council two proposed resolutions, one which would authorize the creation of a "Retail Priority TIF Area" to support the redevelopment of over 200,000 square feet of retail activity known as the Skyland Project (PR15-860) and the second to authorize defendant D.C. to apply to the U.S. Department of Housing and Urban Development ("HUD") for funds to enable NCRC to acquire the Skyland Assemblage (PR15-861). After the Council's

13

Committee on Economic Development and Committee on Finance and Revenue conducted a

joint public roundtable on June 17, 2004, both resolutions were passed by the Council on July

13, 2004 as R15-619 and R15-602 respectively. Such measures are critical to enabling

defendant NCRC to acquire the Skyland Assemblage and carry out the Skyland Project. Upon

information and belief, as of the date of this action, the Retail Priority TIF Area has not been

created, and HUD has not provided any such funds.

31. Upon information and belief, the cost to defendants D.C. and NCRC to carry out

defendant NCRC's responsibilities with respect to the Skyland Project, including, among other

things, land assembly, site preparation and business relocation, will substantially exceed $48

million, the amount defendant NCRC estimated for the Council in February, 2005. Upon

information and belief, defendant NCRC intends to sell the Skyland Assemblage to the private

redeveloper for about $5 million, representing more than a $25 million writedown in the value of

the Skyland Assemblage. Upon information and belief, defendants D.C. and NCRC do not yet

have the funds need to carry out the Skyland Project, and lack in excess of $13 million in such

needed funds.

32. By letter dated February 22, 2005, defendant NCRC offered to purchase plaintiff

Samuel Franco's real property at the Skyland Center. Upon information and belief, defendant

NCRC sent similar letters to the other Skyland Assemblage owners on the same date. By

subsequent letters dated April 15, 2005 and April 28, 2005, defendant NCRC invited plaintiff

Samuel Franco to exchange his interest in his real property for shares in a limited liability

company that would be organized and controlled by defendant NCRC (the "Skyland LLC

14

Proposal"). Upon information and belief, one of the motivations for defendant NCRC's offer is that it lacks the funds to acquire the entire Skyland Assemblage by eminent domain.

33. Defendant NCRC said in its letter of April 28, 2005 that unless by May 13, 2005 plaintiff Samuel Franco agrees to sell his property to NCRC or commits to exchange his property ownership for shares in the Skyland LLC that defendant NCRC is preparing to commence eminent domain proceedings against said plaintiff's property by May 31, 2005. On May 6, 2005, defendant NCRC told a group of Skyland Assemblage owners and representatives, including plaintiff Samuel Franco's attorney, that it lacked the funds to acquire the Skyland Assemblage by eminent domain and that there was no anchor tenant commitment.

COUNT I
(Taking In Violation of the Public Use Provisions of the Fifth Amendment
of the U.S. Constitution)

34. Plaintiffs repeat the allegations in paragraphs 1 through 332 hereof.

35. Plaintiffs' Property is property that may not be taken except for a public use and on payment of just compensation under the Fifth Amendment of the U.S. Constitution.

36. The First and Second Skyland Emergency Acts, the Skyland Temporary Act and the Skyland Permanent Act all would authorize defendant NCRC to take plaintiffs' Property by eminent domain solely for a private and non-public use, *i.e.* redevelopment of the Skyland Shopping Center as a shopping center by a private entity on the grounds that such redevelopment would prove an upgraded shopping center in place of the Skyland Center, create more jobs, increase tax revenues and otherwise foster economic development.

37. None of those purposes or objectives constitutes a public use within the meaning of the Fifth Amendment.

15

38. At all relevant times neither the Property nor any other properties in the Skyland Assemblage has been or now is a slum area or blighted area or otherwise eligible for the exercise of the power of eminent domain by defendants under the NCRC Act as amended, the Skyland Legislation or any other applicable law.

39. Notwithstanding the foregoing, the Council inserted false, unfounded, irrelevant and pretextual findings in the Skyland Permanent Act in a wrongful attempt to justify the exercise of eminent domain on the alleged grounds that the Skyland Center is blighted and otherwise eligible for the exercise of the power of eminent domain.

40. In seeking to take plaintiffs' Property under the Skyland Legislation, defendant NCRC is violating plaintiffs' rights under 42 U.S.C. §1983, as amended, and is threatening to violate plaintiffs' rights under the Fifth Amendment as stated herein. Unless, defendant NCRC is temporarily, preliminarily and permanently enjoined and restrained from taking such action, plaintiffs will suffer irreparable harm to their unique and valuable leasehold and fee ownership property interests without just compensation, and will be forced to relocated their business from the Skyland Center which they would only be able to accomplish, if at all, at great cost and at a great loss of business and money.

41. Upon information and belief, plaintiffs have no adequate or available state remedies.

COUNT II
(Taking In Violation of the Public Use Provisions of the Fifth Amendment of the U.S. Constitution-Vagueness and Ambiguity)

42. Plaintiffs repeat the allegations in paragraphs 1 through 40 hereof.

43. The Skyland Permanent Act amends the NCRC Act in certain respects governing the the powers of eminent domain that defendant NCRC may exercise. Among other things, the

16

Skyland Permanent Act adds a definition of a "project area" and a "slum area" to the NCRC Act, both being areas in which NCRC has authority to exercise eminent domain powers under the NCRC Act. However, the Skyland Permanent Act does not describe, designate or define the Skyland Assemblage as a "project area", "slum area", "blighted area" or any of the other enumerated areas in which NCRC is authorized to exercise eminent domain powers under the NCRC Act. Instead, the Skyland Permanent Act expressly ignores those defined terms and areas, and the criteria and standards which those areas require for the exercise of eminent domain, and merely states that NCRC is authorized to exercise eminent domain over the Skyland Assemblage.

44. Moreover, the Skyland Permanent Act does not state the public purpose or use for which the Skyland Assemblage is to be acquired, or what use is to be made of the Skyland Assemblage, what standards or requirements govern NCRC in acquiring, using or disposing of the Skyland Assemblage or that NCRC is subject to further review or approval by the Council before it may exercise eminent domain powers over the Skyland Assemblage.

45. Further, section 3(c) of the Skyland Permanent Act, which adds a new section 20 (c) to the NCRC Act creates in subsections (2) and (3) thereof an ambiguity and contradiction in the NCRC Act in that subsections (2) and (3) added by the new legislation authorize defendant NCRC or its subsidiary, defendant RLA, to commence eminent domain proceedings in their separate names under the NCRC Act, whereas section 20(a) of the NCRC Act, which in relevant part is not amended by the Skyland Legislation, permits only NCRC to bring such eminent domain proceedings in its own name, not in the name of RLA.

46. Thus, the Skyland Legislation permits NCRC or RLA to exercise eminent domain over the Skyland Assemblage without any standards or requirements whatsoever. In doing so,

17

the Skyland Legislation is impermissibly vague as to the purpose or use for which and manner in

which defendants NCRC or RLA may exercise the power of eminent domain as to the Skyland

Assemblage.

47. Further, the Skyland Legislation is impermissibly ambiguous and contradictory as to

the entity that may exercise eminent domain proceedings over the Skyland Assemblage or any

other property in the District of Columbia under the NCRC Act, as section 20(a) of the NCRC

Act limits that authority to NCRC, whereas section 20(c) of that Act would authorize either

NCRC or RLA to conduct such proceedings in its own name.

48. Plaintiffs repeat the allegations in paragraphs 40 and 41 of this complaint.

COUNT III
(Deprivation of Property in Violation of the Due Process Provisions
of the Fifth Amendment of the U.S. Constitution)

49. Plaintiffs repeat the allegations in paragraphs 1 through 47 hereof.

50. Upon information and belief, B15-752, prior to enactment as the Skyland Permanent

Act, was improperly revised by the Council, in violation of the D.C. Home Rule Act and the

Council's rules of procedure in the months after the enactment and expiration of the First and

Second Skyland Emergency Acts and after the enactment and effectiveness of the Skyland

Temporary Act, to include certain pretextual, wrong, inaccurate, baseless and irrelevant

legislative findings by the Council, and to permit, without explanation, defendant RLA to bring

such eminent domain proceedings in place of NCRC. Defendant Council or an appropriate

committee thereof should have conducted a public hearing of said revisions of B15-752 on

notice before B15-752 was so revised, considered and enacted as the Skyland Permanent Act by

the Council. By these actions, defendants prevented plaintiffs and others similarly situated from

18

protesting such revisions and refuting such pretextual legislative findings, and thereby deprived

plaintiffs, others similarly situated and other interested members fo the public from protesting

such revisions to the Council before enactment of the Skyland Permanent Act.

51. The failure of defendant Council to conduct such a public hearing on notice

constitutes a violation of plaintiffs' due process rights and an unlawful taking of plaintiffs'

Property under the Fifth Amendment of the U.S. Constitution.

52. Plaintiffs repeat the allegations in paragraphs 40 and 41 of this complaint.

### COUNT IV
(Deprivation of Property In Violation of the Due Process Provisions
of the Fifth Amendment of the U.S. Constitution)

53. Plaintiffs repeat the allegations in paragraphs 1 through 52 hereof.

54. Upon information and belief, one of the conditions set or relied on by the Council for

the enactment of the Skyland Permanent Act, was the commitment of defendant NCRC that it or

its redeveloper would have a commitment from an anchor retail (non-grocery) tenant, such as a

Target department store, to lease space and establish a significant retail operation at the

redeveloped Skyland Center before defendant NCRC would initiate any eminent domain

proceedings under that act.

55. Upon information and belief, there are no legal commitments between NCRC and its

proposed redeveloper regarding the Skyland Project as of the date of this action.

56. Notwithstanding the foregoing, upon information and belief, NCRC is now

threatening to commence eminent domain proceedings against plaintiffs' Property, but neither

NCRC nor its proposed private redeveloper has a commitment from such an anchor tenant

satisfying the commitment made by defendant NCRC to the Council as a condition precedent for

19

the enactment of the Skyland Permanent Act, or the exercise of the power of eminent domain thereunder..

57. As a member of the class of persons and entities whose property would be acquired and who would be displaced by defendants NCRC or RLA in carrying out eminent domain proceedings for the Skyland Assemblage, plaintiffs will be deprived of their valuable and unique property without due process of law if defendant NCRC were to proceed without there being such a commitment.

58. The failure of NCRC or its private redeveloper to have such an anchor tenant commitment before proceeding, and the failure of defendant Council to insist on the satisfaction of such condition before defendants NCRC or RLA are authorized to commence eminent domain proceedings under the Skyland Permanent Act constitutes a violation of plaintiffs' due process rights and an unlawful deprivation of plaintiffs' Property without due process of law under the Fifth Amendment of the U.S. Constitution.

59. Plaintiffs repeat the allegations in paragraph 40 of this complaint.

COUNT V
(Violation of the D.C. Home Rule Act - Duplicate Emergency Acts)

60. Plaintiffs repeat the allegations in paragraphs 1 through 59 hereof.

61. In enacting the Second Skyland Emergency Act, defendant DC, through the Council and the Mayor, violated D.C. Code Sec. 1-204.12 of the District of Columbia Home Rule Act, which does not permit enactment of more than one identical emergency measure based on the same emergency circumstances. Defendants D.C. and NCRC wrongfully caused the Council to enact and the Mayor to sign the Second Skyland Emergency Act on August 2, 2004, and it ostensibly became effective on that date and expired on October 31, 2004.

20

62. But for the Second Skyland Emergency Act becoming effective on August 2, 2004, there was no statutory authority for defendant NCRC to take any actions or expend or commit any funds concerning the Skyland Project or the Skyland Assemblage during the period beginning August 19, 2004 when the First Skyland Emergency Act expired and ending September 30, 2004 when the Skyland Temporary Act became effective.

63. Because of such lack of authority, each and every act, expenditure of funds and commitment by NCRC or any of its agents or contractors with respect to the Skyland Project or the Skyland Assemblage during the period beginning August 2, 2004 and ending September 30, 2004 was *ultra vires* and of no force or effect. Such ultra vires and nugatory actions included, among other things, obtaining appraisals of plaintiffs' Property and that of other Skyland Assemblage property owners.

64. As a result of the foregoing, plaintiffs have suffered economic harm and injury and have been threatened with the taking of their Property without just compensation or due process of law in violation of their U.S. constitutional rights and have suffered other harm and losses for all of which defendants are liable to plaintiffs for which defendants are liable to plaintiffs under 42 U.S.C. §1983.

65. Plaintiffs repeat the allegations in paragraphs 40 and 41 of this complaint.

COUNT VI
(Violation of the D.C. Home Rule Act - No Emergency)

66. Plaintiffs repeat the allegations in paragraphs 1 through 65 of this complaint.

67. Section 412, entitled "Emergency Legislation" of "Rules for the Council of the District of Columbia, Council Period XV Resolution of 2003"Council (the "Council Rules")

21

states the circumstances when the Council may consider and act on a bill due to emergency

circumstances and subsection (b) thereof states that

> an "emergency" means a situation that adversely affects the health, safety, welfare, or economic well-being of a person for which legislative relief is deemed appropriate and necessary by the Council, and for which adherence to the ordinary legislative process would result in delay that would adversely affect the person whom the legislation is intended to protect.

68.  Upon information and belief, the ostensible need to commence the negotiation

process with the Skyland Assemblage owners, given as the emergency in emergency

declarations Resolutions 15-556 and 15-622, and, generally, the implementation of the Skyland

Legislation, the acquisition of the Skyland Assemblage and the carrying out of the Skyland

Project, could not be undertaken until (a) at least the Skyland Permanent Act was in full force

and effect, and (b) defendants D.C. and NCRC had the funds necessary to carry out acquisition

of the Skyland Assemblage and to undertake the Skyland Project. Upon information and belief,

defendants D.C. and NCRC knew and understood those facts at all relevant times.

69.  B15-752 could have been enacted by the Council, signed by the Mayor and

submitted for 30 day Congressional review as early as June, 2004. Passing such Congressional

review, B15-752, the Skyland Permanent Act, could have become law in September, 2004, seven

months before it actually became law.

70.  Upon information and belief, at all relevant times defendants D.C. and NCRC

planned to and did  delay enactment of the Skyland Permanent Act to the latest possible date in

Council Term XV to avoid opposition and unfavorable criticism and to permit revisions to B15-

752, among other things, to remedy any perceived defects to the greatest extent possible.

22

71. Upon information and belief, the power to exercise eminent domain with regard to the Skyland Assemblage or to commence negotiations with the Skyland Assemblage owners was not needed by defendant NCRC on an emergency basis within the meaning of Section 412 of the Council's Rules at the time of Resolutions 15-556 and 15-622 or at any other time. Upon information and belief, defendants D.C. and NCRC knew and understood those facts at all relevant times.

72. There was no "emergency" within the meaning of Sec. 412 of the Council Rules at the time of Resolutions 15-556 and 15-622 with respect to First and Second Skyland Emergency Acts; and, thus, under Rule 413 of the Council Rules, there was no basis for the introduction or enactment of the Skyland Temporary Act. Upon information and belief, as of the date of this complaint, defendant NCRC still has not acquired any property in the Skyland Assemblage.

73. But for the First and Second Skyland Emergency Act and the Skyland Temporary Act becoming effective as early as May 21, 2004, there was no statutory authority for defendant NCRC to take any actions or expend or commit any funds concerning the Skyland Project or the Skyland Assemblage during the period beginning May 21, 2004 and ending April 5, 2005 when the Skyland Permanent became effective.

74. As a result of the foregoing, the First and Second Skyland Emergency Acts and the Temporary Act were impermissibly enacted by defendant D.C. and implemented by defendant NCRC.

75. Plaintiffs repeat the allegations in paragraphs 64 and 65 of this complaint.

COUNT VII
(Violation of the District of Columbia Environmental Policy Act of 1989,<br>D.C. Code Sec. 8-109.01 et. seq.)

76. Plaintiffs repeat the allegations in paragraphs 1 through 33 of this complaint.

23

77.  Upon information and belief, the Skyland Legislation, the Skyland Project and agreements and undertakings by defendants D.C. and NCRC to each other and to the redeveloper of the Skyland Project constitute major actions requiring defendants D.C. and NCRC to prepare and file or cause the preparation and filing of environmental impact statements, which must be approved after public hearing, all in accordance with the District of Columbia Environmental Policy Act of 1989, D.C. Code Sec. 8-109.01 et. seq and the regulations thereunder 20 DCMR Chapter 72 (collectively the "D.C. Environmental Laws") before any actions including the acquisition of plaintiffs' Property or of any other property in the Skyland Assemblage may proceed.

78.  Upon information and belief, none of the defendants has undertaken or caused to be prepared or filed an environmental impact screening form or prepared or caused to be prepared or filed and subjected to a public hearing and approval thereafter an environmental impact statement as required by D.C. Environmental Laws.

79.  Upon information and belief, as of May 20, 2005, using funds provided or to be provided by defendant D.C. under the Skyland Support Act, defendant NCRC has contracted to acquire approximately 30% of the land area of the Skyland Center (a major action under the D.C. Environmental Laws, and intends to close on said purchases by July, 2005.

80.  Upon information and belief, for failing to take or for causing such actions to be taken, defendants D.C. and NCRC are in violation of the D.C. Environmental Laws with respect to the Skyland Legislation, the Skyland Assemblage , the Skyland Project, and all actions, expenditures and undertakings relating thereto.

81.  The failure of defendants to take or cause to be taken any actions as alleged in paragraphs 77, 78 and 80 of this complaint violate the rights of plaintiffs and cause them harm and loss as property owners and as affected members of the public, for which said defendants are

24

liable to plaintiffs and should be temporarily, preliminarily and permanently enjoined and restrained from undertaking any activities.

RELIEF REQUESTED

WHEREFORE, plaintiffs requests judgment against defendants, jointly and severally, as follows:

(I) On Counts I and II, declaratory judgment that the Skyland Legislation is unconstitutional and in violation of the Takings and Just Compensation Clauses of the Fifth Amendment of the United States Constitution and 42 U.S.C. §1983;

(ii) On Counts III and IV, declaratory judgment that the Skyland Legislation is unconstitutional and in violation of the Takings and Just Compensation Clauses of the Fifth Amendment of the United States Constitution and the Due Process Clause of the Fifth Amendment and 42 U.S.C. §1983;

(iii) On Count V, declaratory judgment that the Second Skyland Emergency Act was enacted in violation of the D.C. Home Rule Act and is null and void and of no force and effect, and that all actions and commitments of defendants NCRC and D.C. and their respective contractors and agents in undertaking the Skyland Project during the period from August 19, 2004 until September 30, 2004 are null and void and of no force and effect;

(iv) On Count VI, declaratory judgment that the First and Second Skyland Emergency Acts and Skyland Temporary Act were enacted in violation of the D.C. Home Rule Act and are null and void and of no force and effect, and that all actions and commitments of defendants NCRC and D.C. and their respective contractors and agents in undertaking the Skyland Project during the period May 21, 2004 through April 5, 2005 are null and void and of no force and effect;

(v) On Count VII, declaratory judgment that defendant D.C. violated the D.C. Environmental Laws in enacting the Skyland Legislation and in the carrying out of the Skyland Project by defendants D.C. and NCRC;

(vi) On all counts, temporary, preliminary and permanent injunctions against defendants D.C., NCRC and RLA enjoining and restraining said defendants from taking any action to implement the Skyland Legislation or to acquire any property interests in the Skyland Assemblage or to other wise take any action in furtherance of the Skyland Project, and affirmatively requiring defendants D.C., NCRC and RLA to restore the *status quo ante* with regard to the ownership of the Skyland Assemblage;

(vii) Granting plaintiffs damages for the losses and harm they suffered as a result of the actions of the defendants in enacting the Skyland Legislation and in their efforts to acquire plaintiffs' Property and to carry out the Skyland Project;

(viii) Granting plaintiffs reasonable attorneys fees and expenses and the costs of this action; and

(ix) Granting plaintiffs such other and further relief as the Court may deem just and proper.

Ralph Werner
D.C. Bar No. 88161
1020 Nineteenth Street, N.W.,
Suite 400
Washington, D.C. 20036
(202) 331-8940
Attorney for Plaintiffs

## JURY DEMAND

Plaintiff demands a trial by jury on all issues that may be tried by a jury.

Ralph Werner
D.C. Bar No. 88161
1020 Nineteenth Street, N.W.,
Suite 400
Washington, D.C. 20036
(202) 331-8940
Attorney for Plaintiffs