# EXHIBIT 1

# TO DEFENDANTS' JOINT MOTION TO DISMISS

**ENROLLED ORIGINAL**

AN ACT

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

*Codification
District of
Columbia
Official Code*

**2001 Edition**

**2005 Winter Supp.**

**West Group Publisher**

To amend the National Capital Revitalization Corporation Act of 1998 to authorize the National Capital Revitalization Corporation or the RLA Revitalization Corporation to exercise eminent domain at the Skyland Shopping Center, and to clarify the circumstances and procedures by which the National Capital Revitalization Corporation otherwise may exercise its eminent domain authority.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Amendment Act of 2004".

Sec. 2. Eminent domain authorization for Skyland Shopping Center redevelopment project.
   (a) The Council finds the following:
      (1) The communities east of the Anacostia River, including the areas near the Skyland Shopping Center, have lagged behind other communities in the District in economic development and have the highest unemployment rates in the District.
      (2) Wards 7 and 8 including the neighborhoods surrounding the Skyland Shopping Center remain economically depressed and underserved by the amenities enjoyed by the rest of the District and nearby Maryland.
      (3) One of the key reasons why these areas lag behind is because certain critical commercial locations are run down or blighted.
      (4) The Skyland Shopping Center is a blighting factor in the Hillcrest and nearby communities.
      (5) The Skyland Shopping Center is characterized by underused, neglected, and poorly maintained properties.
      (6) These poor conditions of the Skyland Shopping Center have fueled crime and attracted criminal elements to the site and is likely to have increased the incidence of crime in the surrounding neighborhoods.
      (7) The Skyland Shopping Center has been the site of a significant amount of stray and illegally dumped garbage, which the current owners have not removed in a timely

manner and which has created an eyesore and nuisance in the community.

(8) The layout of the current shopping center is unsafe for both motorists and pedestrians.

(9) The fragmented and often absentee ownership of the properties has exacerbated these problems by allowing individual owners to avoid responsibility for safety and the reduction of crime, trash, and other blighting factors.

(10) Neither the police nor the community have been able to secure the cooperation of the current owners to deal with the numerous problems at the site despite years of efforts.

(11) For over 15 years, residents near the shopping center have petitioned the District to become involved in the redevelopment of the area and the correction of conditions at the site.

(12) The National Capital Revitalization Corporation ("Corporation") has advised the Council that the Skyland Shopping Center is blighted and that current conditions are an impediment to the economic revitalization of this area of the District.

(13) The Corporation has proposed a redevelopment of the Skyland Shopping Center that will create hundreds of new jobs, attract businesses that are desired by the community, and stimulate economic activity east the Anacostia River.

(14) The assemblage of the properties comprising the Skyland Shopping Center is necessary to allow for the proposed redevelopment and it is highly unlikely that the properties could be assembled without the involvement of the District government and without the authority to exercise eminent domain by the Corporation.

(15) The assemblage of the properties comprising the Skyland Shopping Center and the construction of a new shopping center on the site, guided by the policies and requirements of the District government including the Corporation, will further many important public purposes including:

(A) Removal of unsafe and unsanitary conditions;
(B) Reduction of the incidence of crime;
(C) Removal of garbage and other eyesores;
(D) Reorganization and reorientation of the site to make it safer and more attractive;
(E) Expansion of economic opportunities for residents of Wards 7 and 8;
(F) Provision of needed job opportunities for residents of Wards 7 and 8;
(G) Provision of needed retail options and other amenities for residents of Wards 7 and 8;
(H) Revitalization of an economically distressed community; and
(I) Increasing and diversifying the tax base of the District.

(16) The properties listed and described in section 20(c)(1) of the National

**ENROLLED ORIGINAL**

Capital Revitalization Corporation Act of 1998, effective September 11, 1998 (D.C. Law 12-144; D.C. Official Code § 2-1219.19(c)(1)) are necessary and desirable for the public use.

Sec. 3. The National Capital Revitalization Corporation Act of 1998, effective September 11, 1998 (D.C. Law 12-144; D.C. Official Code § 2-1219.01 *et seq.*), is amended as follows:

  (a) Section 2 (D.C. Official Code § 2-1219.01) is amended as follows:     <span style="float:right">Amend § 2-1219.01</span>
    (1) Add a new paragraph (30A) to read as follows:
    "(30A) "Project area" means a geographic area designated by the Corporation, by a majority vote of the Board, for which the Corporation has developed a site and use plan that shall include the following elements:
      "(A) The reasons for the designation of the project area;
      "(B) A description of the project area including:
        "(i) The total number of square feet or acres;
        "(ii) A map that identifies the property; and
        "(iii) A description of the physical and economic conditions existing in the project area;
      "(C) A description of the development proposed by the Corporation for the project area including:
        "(i) A description of the buildings, other structures, parks, public spaces, or public amenities to be constructed or rehabilitated; and
        "(ii) A description of the uses to be located on the site.
      "(D) A description of how the development in the project area will improve or alleviate the conditions described in subparagraph (B)(iii) of this paragraph.".
    (2) Add a new paragraph (36A) to read as follows:
    "(36A) "Slum area" means an area where there is a predominance of buildings or improvements, whether residential or nonresidential, which are impaired or substandard by reason of dilapidation, deterioration, age, or obsolescence that:
      "(A) Contribute to physical or economic conditions conducive to disease, infant mortality, juvenile delinquency, poverty, or crime; and
      "(B) Endanger life or property by fire or other causes.".

  (b) Section 8(b) (D.C. Official Code § 2-1219.07(b)) is amended by adding the phrase "shall be conducted pursuant to the following procedures and" after the phrase "any subsidiary thereof,".     <span style="float:right">Amend § 2-1219.07</span>

  (c) Section 20 (D.C. Official Code § 2-1219.19) is amended as follows:     <span style="float:right">Amend § 2-1219.19</span>
    (1) Subsection (a) is amended as follows:
      (A) The lead-in language is amended as follows:
        (i) Add the phrase "; provided, that references to the Mayor in subchapter II of Chapter 13 of Title 16 shall be deemed to be references to the chief executive officer of the Corporation for the purposes of this subsection" after the term "16-1316".

(ii) Strike the phrase "to be a" and insert the phrase "to be" in its place.

(B) Paragraphs (1), (2), (3), and (4) are amended to read as follows:.

"(1) A redevelopment district;

"(2) A project area;

"(3) A blighted area or slum area;

"(4) A blighted area, slum area, or substandard area within the meaning of the Redevelopment Act;".

(C) New paragraphs (5) and (6) are added to read as follows:

"(5) An area subject to an urban renewal or redevelopment plan; or

"(6) An area subject to a neighborhood development plan.".

(2) A new subsection (c) is added to read as follows:

"(c)(1) Notwithstanding the provisions of subsections (a) or (b) of this section, the Council approves the exercise of eminent domain by the National Capital Revitalization Corporation or the RLA Revitalization Corporation for the following property: Square 5632, Lot 1; Square 5632, Lot 3; Square 5632, Lot 4; Square 5632, Lot 5; Square 5632, Lot 802; Square 5633, Lot 800; Square 5633, Lot 801; Square 5641, Lot 0010; Square 5641, Lot 0011; Square 5641, Lot 0012; Square 5641, Lot 0013; Square 5641, Lot 0819; Square 5641N, Lot 0012; Square 5641N, Lot 0013; Square 5641N, Lot 0014; Square 5641N, Lot 0015; Square 5641N, Lot 0016; Square 5641N, Lot 0017; Square 5641N, Lot 0018; Square 5641N, Lot 0019; Square 5641N, Lot 0020; Square 5641N, Lot 0021; Square 5641N, Lot 0022; Square 5641N, Lot 0023; Square 5641N, Lot 0024; Square 5641N, Lot 0025; Square 5641N, Lot 0026; Square 5641N, Lot 0027; Square 5641N, Lot 0028; Square 5641N, Lot 0029; Square 5641N, Lot 0030; Square 5641N, Lot 0031; Square 5641N, Lot 0033; Parcel 02130052; Parcel 02130060; Parcel 02130061; Parcel 02140062; Parcel 02140088; Parcel 02140104; Parcel 02140182; Parcel 02140187; Parcel 02140189; Parcel 02140190; Parcel 02140196; and any other parcel or property located within the geographic area bounded by a line beginning at a point at the intersection of the northerly line of Good Hope Road, S.E., with the northerly line of Alabama Avenue, S.E., and running northwesterly along said line of Good Hope Road, S.E., extended, to intersect a point on the east line of Naylor Road, S.E.; thence northwesterly along said line of Naylor Road to a point at the northwesterly corner of Lot 801 in Square 5633; thence northeasterly along the northerly line of said lot and square to a point at the westernmost corner of Parcel 213/52; thence continuing northeasterly along the northerly line of said Parcel 213/52 to a point at the southwesterly corner of Parcel 213/60; thence northwesterly along the arc of a curve, deflecting to the right, along the westerly line of said Parcel 213/60 to a point at the northernmost corner of said Parcel 213/60; thence southeasterly along the easterly lines of said Parcels 213/60 and 213/52 to a point at the northwesterly corner of Lot 33 in Square North of Square 5641; thence easterly along the north property lines of said Lot 33 and Lots 16 through 31, both inclusive, in Square north of Square 5641 to a point at the northeast corner of said Lot 31 in said square; thence south along the east line of said Lot 31 in said square to a point at the southeast corner thereof; thence westerly

**ENROLLED ORIGINAL**

along the south lines of said Lots 31, 30, 29, 28, 27, 26, 25, 24, 23 and 22 in said square to a point at the southwest corner of said Lot 22 to intersect a line drawn northwesterly from the northeast corner of Lot 12 in Square North of Square 5641; thence southeasterly along said line drawn and the east line of said Lot 12 in said square to a point at the southeast corner thereof to a point that intersects a line drawn northwesterly from the northeast corner of Lot 13 in Square 5641; thence southeasterly along said line drawn and the east line of said Lot 13 in said square to a point at the southeast corner thereof; thence southwesterly along the south property lines of Lots 13 and 12 in Square 5641 to a point that intersects a line drawn northwesterly from the northeast corner of Lot 819 in Square 5641; thence southeasterly along said line drawn and the east line of said Lot 819 in said square to a point at the southeast corner of said Lot 819 in said square, on the north line of Alabama Avenue, S.E.; and thence southwesterly along the arc of a circle deflecting to the right along said line of Alabama Avenue, to the point of beginning.

"(2) The Corporation or the RLA Revitalization Corporation shall exercise eminent domain under this subsection in accordance with the provisions of subchapter II of Chapter 13 of Title 16; provided, that references to the Mayor in that subchapter II 16 shall be deemed to be references to the chief executive officer of the Corporation or the RLA Revitalization Corporation for the purposes of this subsection.

"(3) A condemnation proceeding brought under this section shall be brought in the name of the Corporation or the RLA Revitalization Corporation, and title to the properties shall be taken in the name of the Corporation or the RLA Revitalization Corporation.".

Sec. 4. Fiscal impact statement.
The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 5. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto), a 30-day period of Congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24,

**ENROLLED ORIGINAL**

1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)), and publication in the District of Columbia Register.

_____
Chairman
Council of the District of Columbia

_____
Mayor
District of Columbia