UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAMUEL FRANCO, et. al.,             :              :
                    Plaintiffs      :   Civil No. 1:05-CV-01058 (RMU)
            v.                      :
                                    :
THE DISTRICT OF COLUMBIA, et. al.,  :
                    Defendants.     :

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiffs, Samuel Franco, Nathan Franco, Allen Franco and D Mart, Inc., by their attorney herein, submit this memorandum of points and authorities in opposition to the motion of defendants District of Columbia, National Capital Revitalization Corporation and RLA Revitalization Corporation to dismiss the complaint[1].

INTRODUCTION

Defendants' motion to dismiss should be denied, because (a) plaintiffs' claims under 42 U.S.C. §1983 are presently justiciable in this Court, (b) the recent U.S. Supreme Court decision in Kelo v. City of New London (no. 04-108, decided June 23, 2005) makes clear that takings such as that alleged in this case are not for a public use under the Fifth Amendment, and, therefore, the complaint states a claim, and (c) the complaint states a claim that defendant D.C. Council impermissibly enacted two identical emergency acts as part of the Skyland Legislation, and impermissibly invoked the emergency legislation provisions of the D.C. Home Rule Act in enacting the Skyland Legislation.

In light of the distinctions made by the Supreme Court in Kelo between takings for economic development that are constitutional and those takings that are not for a public purpose

---

[1] In this memorandum, defined terms have the same meaning given in the complaint unless otherwise provided herein.

or public use and that are impermissible *per se*, plaintiffs, prior to filing this response, amended their complaint to present additional claims that the taking authorized by the Skyland Legislation is not for a public purpose or use. Plaintiffs' also amend Count III, and delete Count VII of the complaint. Although, such amendments essentially render the motion to dismiss moot as to claims amended, especially Counts I-IV of the complaint that allege violations of the Takings and Due Process Clauses of the Fifth Amendment of the U.S. Constitution, plaintiff submits this opposition to the motion.

ARGUMENT

Standard of Review

For purposes of defendants' motion, the factual allegations of the complaint must be taken as true, and all reasonable inferences must be drawn in plaintiffs' favor. Lockamy v. Truesdale, 182 F. Supp. 2d 26, 31 (D.D.C. 2001). See also U.S. Office Products Securities Litigation, 326 F. Supp. 2d 68, 73-74 (D.D.C. 2004).

1. The complaint is not premature, and is not subject to dismissal under Rule 12(b)(1).

Defendants argument that plaintiffs' complaint is premature because their property has not been taken misses the mark[2]. The Takings Clause proscribes takings for a public use without just compensation. Thus, under the special ripeness doctrine of Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985) if a taking for a public use has occurred, the claimant must first seek just compensation in the state court before he may invoke federal jurisdiction to vindicate his constitutional rights. Williamson, at 194-95..

---

[2]According to Defendants' attorney, on July 8, 2005, NCRC commenced eminent domain actions in D.C. Superior Court against a number of Skyland owners, including plaintiff Samuel Franco, by filing a complaint against each such owner. NCRC did not file a declaration of taking in any such case, and hence, title to such property remains with the owner until judgment, or the earlier filing of a declaration of taking. See D.C. Code §16-1314, (2001 Ed.as amended).

2

See also Ruckelshaus v.Monsanto Co. 467 U.S. 987, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law when a suit for compensation can be brought against the sovereign subsequent to the taking." (citations omitted)).  However, neither Williamson nor Ruckelshaus, nor any of their progeny dealt with or focused on a taking for a *private* use.  Where, as alleged here, the taking is not for a public use, but for a private use, then compensation is unavailing and irrelevant under the Takings Clause.  Indeed, in this action, plaintiffs do not seek compensation for the taking, but rather seek a declaratory judgment that their property may not be taken under the Takings Clause, because it is being taken for a non-public or private use.  This Court, of course, has jurisdiction over such declaratory judgment actions, brought under the Declaratory Judgment Act, 28 U.S.C. §2201, *et. seq.,* as well as under the Constitution and other federal statutes.  See Duke Power Co. v. Carolina Environmental Study Group, Inc. 438 U.S. 59, 71, n. 15 (1978).

In this context, Donnelly v. District of Columbia Redevelopment Land Agency, 269 F.2d 546, 547 and n.1 (D.C. Cir. 1959) (Defendants' Memorandum, at 13) is not authority for the proposition that owners' efforts to seek equitable relief prior to the commencement of a condemnation proceeding have been consistently rebuffed in this jurisdiction, or that Donnelly is relevant authority on this motion.  Although, in Donnelly, the owner sought declaratory as well as injunctive relief,. the grounds on which the injunction was denied are not stated.  In light of the summary judgment granted in that case, it is likely that other grounds, such as the lack of likelihood of success on merits, were present and caused that court to reject equitable relief.

At the time when the U.S. Constitution and the Bill of Rights were adopted, private property rights were determined in accordance with the common law.  The Constitution did not declare those rights.  "(P)roperty interests... are not created by the Constitution.  Rather they are

3

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law". (quotations and citations omitted)(alterations in original). Ruckelshaus, 467 U.S. 986, 1001. See also, Urbina, J., Memorandum Opinion dated May 31, 2005, in Rumber v. District of Columbia (Civil No. 04-1170), at 9, n.3).

In declaring that private property may be taken for a public use upon payment of just compensation, the Fifth Amendment precluded the taking of any private property for a private use. Thus, a taking for a private use is *per se* unconstitutional and no amount of compensation is deemed acceptable in justification of such a taking. See Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 245 (1984). See also Kelo, slip op. at 7. Hence, resort to any tribunal, state or federal, to seek compensation for such a taking is irrelevant and would be unavailing; the only relief the injured claim would seek is equitable relief, either to prevent the taking or to restore his property. The cases cited by defendants, Ruckelshaus and Williamson at least implicitly, all recognize this limitation in their formulation of the prudential rule under the Takings Clause.

Those cases have nothing to do with private use takings. In Patsy v. Board of Regents of the State of Florida, 459 U.S. 496, 516 (1982), The U.S. Supreme Court held that a claimant did not have to exhaust its administrative remedies in an action under 42 U.S.C. §1983. Williamson imposed special requirements of exhaustion and seeking compensation in Takings Clause cases under §1983. However, neither case dealt with a claim under §1983 which did not seek compensation.

Indeed, no such case is cited by defendants and plaintiffs have not found any case holding that a federal court cannot entertain an equitable remedy action under Sec. 1983 in a private use takings case. To the contrary, there are a number of federal cases, permitting such equitable actions. See, *e.g.,* 99 Cents Only Stores v. Lancaster Redevelopment Agency, 237 F.

Supp. 2d 1123, 1129 (CD Cal. 2001). Indeed <u>Aaron v. Target Corp</u>., 357 F.3d 768 (8 Cir. 2004), relied on by defendants (Defendants' Memorandum, at 14) was decided on abstention grounds, not lack of ripeness. By contrast, here none of the defendants had initiated any eminent domain proceedings against plaintiffs or any other Skyland property owners as of the commencement of this action. But see note 1, *supra*.

In <u>Patel v. City of Chicago</u>, 383 F.3d 569 (7 Cir. 2004), also relied on by defendants (Defendants' Memorandum, at 13-14) the constitutional claim was denial of equal protection under the 14th Amendment, not a taking for a private use under the Fifth Amendment Takings Clause. Indeed, the portion of <u>Patel</u> that defendants quote in their Memorandum at 14 makes this contrast abundantly clear. In Patel, the Court stated "<u>Because the Plaintiffs have suffered no injury and will only do so if and when the City fails to compensate them justly for their properties</u>, their claim is not ripe for review. (Emphasis added). By definition, as stated above, the injury to the property owner when his property is taken for a private use occurs *ab initio*, on the taking. No amount of compensation will give sufficient relief or prevent injury. Thus, deference to state tribunal to determine just compensation in such cases is totally inappropriate.

In such circumstances, the claimant need not exhaust his state remedies even if compensation is provided, but may resort to the federal courts to protect against the unconstitutional taking. <u>Montgomery v. Carter County, Tennessee</u>, 226 F. 3d 758, 770 (6 Cir. 2000). See also <u>Samaad.v. City of Dallas</u>, 940 F. 2d 925 (5th Cir. 1991), <u>Armendariz v. Penman</u>, 73 F.3d 1311, 1320-21 & n. 5 (9th Cir. 1996). (en banc). cf. <u>Daniels v. Area Planning Commission of Allen County</u>, 306 F.2d 445, 452 (7 Cir. 2002). In <u>TriCounty Industries v. District of Columbia</u>, 104 F.3d 455, 458-59 (D.C. Cir. 1997), the Court applied the <u>Williamson</u>

5

special ripeness requirements to an action seeking just compensation, but that decision is not applicable here since plaintiffs are not seeking compensation.

In applying the ripeness test, where a facial takings clause challenge is made to a statute, the Williamson standard does not apply.  Yee v. City of Escondido, 503 U.S. 519,534 (1992).  See also San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. ____ (No. 04-340, decided June 20, 2005) (slip op at 21).  As defendants acknowledge in their memorandum in support of their motion (Defendants' Memorandum, at 10 and 16), plaintiffs allege a facial challenge to the Skyland legislation.  Defendants, thus, concede that plaintiffs' claims that the Skyland Legislation is unconstitutional in that it is not for a public use is a facial challenge.  (Defendants' Memorandum, II A, at 10, II D, 16).  Accordingly, the Williamson special ripeness rules do not apply.

2.  Plaintiffs as lessees have standing to bring this action.  In section C. 2 of their argument, Defendants' Memorandum, at 15, defendants argue that the claims of plaintiffs herein who are lessees (those plaintiffs other than plaintiff Samuel Franco) are too speculative if their leases terminate upon condemnation and preclude their receiving any compensation in such eminent domain proceedings.  Again, defendants miss the central point at issue on their motion.  This is not a case where just compensation is at issue; the issue here is an unconstitutional taking of property for a private use.  Defendants cannot and do not argue that plaintiffs' leasehold interests are not property interests.  They obviously are property interests protectible under the Takings Clause.  See, e.g. Pennsylvania Avenue Development Corporation v. One Parcel of Land, 216 U.S. App. D.C. 131, 670 F.2d 289, 292 (D.C. Cir. 1981)

Whether or not plaintiff lessees' interests terminate upon a taking of the fee interest in the property on condemnation, they have a present leasehold interest in their property which is being

threatened by the Skyland Legislation.  Said plaintiffs' claims spring from an injury in fact that is an invasion of their legally protected interest.  Their interests are present, concrete and particularized and is fairly traceable to the acts of defendants challenged in this action, are likely to be satisfied and protected by a favorable decision by this Court.  As such, they have standing to seek relief in this action.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).  As plaintiff lessees' interests are real and immediate; they are not speculative, and they have a constitutional right to protect the wrongful termination of their leasehold interests by a wrongful taking for a private use.

      3.  Based on the U.S. Supreme Court decision in Kelo v. City of New London, (no. 04-108, decided June 23, 2005), plaintiffs have stated a claim that the Skyland Legislation and the taking alleged in the complaint are not a taking for a public use and are unconstitutional.  This case raises the issue whether the Skyland Legislation taking here is, in the words of the Court a "taking for the purpose of conferring a private benefit on a particular private party", a taking under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit (Kelo, slip at 7) or a "one to one transfer of property, executed outside the confines of an integrated development plan" (id. at 16).  These questions and circumstances were not presented in Kelo, but the Court in Kelo clearly states that any such a taking is for a private use and not for a public use.  See Kelo, slip op. at 7, 16)

      Plaintiffs' allege that the taking at issue here is a taking for a private use.  Kelo holds that the taking of private property by eminent domain to achieve economic development is for a public use under the circumstances present in that case.  The Court stated that indicia that such a taking is for a public use include the fact that the taking is pursuant to a comprehensive redevelopment plan for the area that has been governmentally considered and approved and that

7

is not intended to benefit a particular class of identifiable individuals (citing Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 245 (1984)) Kelo, slip op at 7-8.

However, the Supreme Court made clear that the city could not take private property from owner A simply to confer a benefit on a particular private party citing Midkiff, *supra.* at *id.*, and that it could not take property under the pretext of a public purpose when its actual purpose was to bestow a private benefit.  Kelo, slip op. at 7.

By this measure, the taking under the Skyland Legislation for the Skyland Project is not a public use or for a public purpose.  First, in Kelo there was a comprehensive development plan in New London that was considered and approved by the local government, and a planning process that consisted of the governmental agency, the NLDC, developing a development plan that was reviewed and approved by state agencies as well as by the New London City Council (see Kelo, slip op. at 2-4).  By contrast, in the instant case, no comprehensive plan of the Anacostia area or the Hillcrest community or even the Skyland Assemblage was ever prepared by the government or anyone on behalf of the government, much less considered, in connection with the Skyland Legislation or the Skyland Project.  The only plan or scheme that has been prepared for the redevelopment of any of those areas in connection with the Skyland Legislation or the Skyland Project, was the proposed development scheme prepared by the Rappaport Companies as part of its application for selection by NCRC as the Redeveloper in 2002, two years before the Skyland Legislation was proposed.  Thus, the Redeveloper, for whose benefit the Skyland Legislation has been proposed, was identified and involved in the process of proposing the taking from its inception and has continued to be involved in the process throughout the entire time of preparing, proposing and enacting of the Skyland Legislation.

Neither NCRC nor any other public entity prepared a comprehensive plan for redevelopment of Skyland before the Skyland legislation was passed. What NCRC did was respond to the demands of certain community groups in Hillcrest and seek proposals from private developers to redevelop the Skyland Center. In the process of receiving proposals from developers in 2002, each applicant proposed the type of development it would carry out. NCRC chose the Rappaport group as the Redeveloper, and its proposal became the development plan for the Skyland Project. Then NCRC and the Redeveloper entered into a joint development agreement (the "JDA") which required NCRC to obtain authority and approval from its Board and from the Council to assemble the property by eminent domain and transfer it to the Redeveloper. The Skyland Legislation was sought by NCRC to achieve that objective and solely for that purpose.

Thus, NCRC had preselected its redeveloper before it sought legislative authority to acquire the Skyland Assemblage, and tailored its efforts in seeking the enactment of the Skyland Legislation and in obtaining eminent domain authority under that legislation to acquire the Skyland Assemblage in order to meet its obligations to the Redeveloper. NCRC knew that the Skyland Assemblage did not meet the NCRC Act's statutory criteria as a project area, blighted area, development area or other area which might be acquired by NCRC by eminent domain under the NCRC Act. Thus, NCRC sought legislative authority to condemn Skyland without regard to the fact that the Skyland Assemblage did not constitute property or an area that could be acquired by NCRC by eminent domain under the NCRC Act, and the Skyland Legislation so provides.[3]

---

[3] The NCRC Act provides an elaborate structure of planning and public actions which must be undertaken before NCRC can employ or seek to employ eminent domain authority. First, NCRC had to complete and adopt a Revitalization Plan which is not inconsistent with the Comprehensive Plan for the District (Sec. 2-1219.12) The plan shall set forth NCRC's strategy for, among other things, facilitating retail services within Priority Development

At no time prior to the Skyland Legislation, did NCRC or the District government or any other public or private agency conduct any slum and blight studies at Skyland, and report those findings. NCRC admitted that the only report ever prepared for NCRC that mentioned blighting conditions at Skyland, an Economic Research Associates report dated 2002, was obsolete and would not be used in dealing with the Skyland property owners. Thus, the legislative findings added belatedly to B15-752 by the Council's Committee on Economic Development, six months after the public hearing were false and pretextual for all the reasons stated in the complaint. More significantly, when measured by the U.S. Supreme Court's decision in Kelo, the Skyland Legislation, especially B15-752 which became the Skyland Permanent Act, has a pretextual public purpose meant to hide its actual purpose of enabling NCRC to assemble the Skyland Assemblage by eminent domain and sell it to the Redeveloper for his own benefit. See Kelo, *supra.*, slip op at 7, 11

Here, as the amended complaint alleges, the facts are that the while agitation by community members and organizations for an upgraded Skyland Center caught the attention and interest of NCRC, once NCRC became involved, the Skyland Project became simply a redevelopment transaction to be accomplished between NCRC and the successful redeveloper applicant. The JDA reveals that NCRC bargained with the Redeveloper to sell it the land to develop as the Redeveloper wishes for an agreed consideration and for the right of NCRC to share in the cash flow from operations and capital proceeds received from the project. The

---

Areas, and in neighborhoods throughout the District, including, but not limited to, redevelopment of contaminated and underutilized commercial, industrial and residential sites. In the five years following adoption of the Revitalization Plan, NCRC has to develop annual Performance Plans showing, among other things, its annual performance goals, and provide for periodic outside evaluation. (Sec. 2-1219.13). Further, within 120 days of its initial meeting the NCRC Board had to adopt written criteria for selecting the types of assistance that most appropriate for particular types of economic development projects.

Redeveloper will alone own the redeveloped Skyland Center and select its tenants and occupants. By contrast, in New London, the project was for a public purpose, because it was not intended to benefit either Pfizer, whose announced plan to build a technology facility there was the inspiration for the development plan, or any other private interest, none of which had been identified before the plan was approved. (Kelo, slip op. at 7 and note 6).

The Court looks solely to the purpose of the taking to determine its constitutionality, not its mechanics, citing Midkiff, Kelo, slip op. at 11. By that measure, here, the purpose is simply to provide a better shopping center, not to remove blight or other conditions which have been judged sufficient for public action. The blight findings and other stated findings of public purposes are pretextual, and are driven solely by a desire to sustain a decision previously made by NCRC in 2002, to sell the Skyland Assemblage to the Redeveloper, against a constitutional challenge to the Skyland Legislation enacted two years later.

Kelo succinctly reveals the distinguishing features between a taking for a public use or purpose as in the New London plan, and an impermissible taking for a private use, as in the Skyland Legislation.. As the Court stated in Kelo, if a city were to approve a transfer of Citizen A's property to Citizen B for the sole reason that Citizen B will put the property more productive use and thus pay more taxes, and that were done outside the confines of a integrated development plan, it would certainly raise a suspicion that a private purpose were afoot (citing 99 Cents Only Stores v. Lancaster Development Agency, 237 F. Supp. 2d 1123 (CD Cal. 2001)) *Id.*, at 16 and note 7. That, in substance, is claimed in the complaint.

Defendants' argument that the deference to Council's legislative findings and determination of the public is required and cannot be challenged under Berman v. Parker, 348 U.S. 26, 32 (1954) (Defendants' Memorandum at 20) is refuted by Kelo, where the Court stated

11

that in circumstances, such as alleged here, involving a purely private taking, "it could not withstand scrutiny of the public use requirement", citing Midkiff, *supra.*, 467 U.S. at 245, and, similarly, that a city "would (not) be allowed to take property under the mere pretext of a public purpose when its actual purpose was to bestow a private benefit." Kelo, slip op at 7.

Under such circumstances when the city's actions are suspect, there is a strict scrutiny analysis standard, and the City's determination of its public purpose (or blight finding), is subject to review and may present a genuine issue of fact, to determine whether it is genuinely held, in the particular case.  See Cottonwood Christian Center v. Cypress Redevelopment Agency,218 F, Supp. 2d 1203, 1228 (CD Cal. 2002).

Here, given the timing and circumstances of the findings added to B15-752 and the very limited presentation of testimony, the lack of current documentary studies or evidence to support those findings, the denial of an opportunity to plaintiffs and other members of the public opposed to the Skyland Legislation to offer contrary evidence or objections, renders the entire set of findings suspect.  Further, even though in Kelo the Court said that it would defer to the city's considered determinations regarding the efficacy of its development plan and the amount of land the local government determined should be taken by eminent domain, citing Berman v. Parker, *supra.*, 348 at 35-36, where, as alleged here, there is no public purpose, under Kelo a court will, of course, review all aspects of a private purpose taking.  Kelo, slip op. at 7, 18.

The sum and substance of the taking authorized by the Skyland Legislation is that it is nothing more than an exercise of governmental power to enable performance of a deal orchestrated by the government in league with a  private developer, the Redeveloper, to acquire a private property for his own private use with the aid of the government's eminent domain power.  Such a private taking clearly violates the Fifth Amendment Takings Clause.

The complaint states the substance of many of the foregoing fact allegations and creates reasonable inferences of others supporting plaintiffs' claims in this action.

4. <u>The Council impermissibly passed two successive Skyland Emergency Acts based on the same emergency to delay and avoid Congressional review of the Skyland Permanent Act</u>. Defendants argue that Counts V and VI of the complaint fail to state a claim under the D.C. Home Rule Act because the emergency acts being challenged have expired and the issue is moot, and the Council's determination of an emergency is entitled to substantial deference. Defendants' Memorandum, at 22-25. Defendants fail to cite or discuss <u>District of Columbia v. The Washington Home Ownership Council, Inc</u>. 415 A.2d 1349, 1359 (D.C. App. 1980) ("WHOC") which held that successive emergency acts based on same emergency are not permitted. In Washington Home, the District of Columbia argued that the Council could pass an indefinite number of emergency acts based on the same declared emergency and thus in effect establish an alternative track to passing legislation. The Court in an *en banc* decision rejected that argument.

<u>United States v. Alston</u>, 580 A.2d 587 (D.C. App. 1990) relied on by Defendants in their memorandum at 24-25 affirmed and followed the holding in <u>WHOC</u>. However, unlike in <u>WHOC</u>, in <u>Alston</u> the Court found that the successive emergency acts based on the same emergency were permissible because the Council's motive in passing them was to maintain the *status quo* pending Congressional review of the pending permanent legislation (in that case criminal legislation subject to a 60 day review period in Congress). As the Court explained in <u>Alston</u>, in <u>WHOC</u>, the Court was confronted with an attempt by the Council to avoid congressional review, a case of "chain hanky-panky". 580 A.2d at 595.

Plaintiffs claim in their complaint in substance that defendant Council engaged in "chain hanky-panky" in enacting the Skyland Emergency Acts , the Skyland Temporary Act and

13

especially the Skyland Permanent Act to enable the Council to avoid or defer review and criticism of their actions. See, e.g. Complaint, para. 28. Counts V and VI of the complaint allege that the Council passed two identical emergency acts and an identical temporary act without legislative findings to enable NCRC to carry out its eminent domain activities, including the pre-acquisition steps leading up to them, and only at the last possible moment at the end of the legislative year (the Council Period) did the Council pass the permanent legislation with the findings and submit them to the public and the Mayor and the Congress. Plaintiffs claim, or it can be reasonably inferred, that the Council wanted to evade the public (congressional) review of its pretextual findings to the latest extent possible.

    Even with deference to the Council, plaintiffs claim and are entitled to prove that the Council itself caused delay in passing the Skyland Legislation by withholding the permanent legislation in committee and then reporting it out with major changes 6 months after the puiblic hearing on the measure. Since the Committee could have reported that measure to the full Council in May, 2004 and it could have had a first reading in May, 2004 and a second reading in June, 2004, it could have been passed by the Council as early as June 8, 2004, signed by the Mayor that month and transmitted to the Congress for its 30 day Congressional review also in June, 2004. Thus, B15-752 could have become law after such Congressional review, at the same time as the Skyland Temporary Act, on September 30, 2004. Under Council Rule 450, a bill that has not been finally adopted by the Council before the end of the Council Period in which it was introduced lapses without prejudice. That was the reason for the adoption of B15-752 in November-December, 2004, just prior to the end of Council Period XV as alleged in the complaint.

WHOC is applicable to the reasons for the passage of the two emergency Skyland measures, for here the Council is alleged to have a motive other than to maintain the status quo pending passage of permanent legislation, as was the case in WHOC. The instant action is not like Alston. Hence, Count V, which incorporates para. 28, states a claim.

As for mootness claimed by defendants (Defendants' Memorandum, at 22), the Court in WHOC held that even after they are replaced by permanent legislation, the emergency acts issues are not moot. They can be challenged in court. Otherwise the Council can evade such review by passing such repeated acts. *id.*, at 1350, n.3.

As for the declaration of the emergency, in Atchison v. District of Columbia, 585 A.2d 150 (D.C. App. 1991), cited in Defendants' Memorandum at 22, the D.C. Court of Appeals stated the standard of review of the Council's emergency declaration:

> Therefore, in looking at a legislatively declared emergency, we seek only to assure ourselves that the act is *facially valid*, i.e3. Consistent with Council legislative authority in partnership with Congress (citation omitted) (emphasis in original)

585 A.2d at 157.

Council Rule 412 EMERGENCY LEGISLATION (b) provides

> (b) for purposes of this Rule, an "emergency" means a situation that adversely affects the health, safety, welfare, or economic well-being of a person for which legislative relief is deemed appropriate and necessary by the Council, and for which adherence to the ordinary legislative process would result in delay that would adversely affect the person whom the legislation is intended to protect.

However, as alleged in the complaint, the first emergency declaration stated in part that the emergency was "...to show the commitment of the D.C. government to the project". Complaint, para. 17. How can the commitment of the District government be given in such circumstances when it is obviously dependent on the ultimate passage of the permanent

legislation. Plaintiffs submit that stated as an emergency such government commitment makes the entire resolution facially invalid.

CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss the complaint should be denied.

Respectfully submitted,

_____/s/_____
Ralph Werner
D.C. Bar No. 88161
1020 Nineteenth Street, N.W.,
Suite 400
Washington, D.C. 20036
(202) 331-8940
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMUEL FRANCO, et. al., | : | : |
| Plaintiffs | : | Civil No. 1:05-CV-01058 (RMU) |
| v. | : | |
| | : | |
| THE DISTRICT OF COLUMBIA, et. al., | : | |
| Defendants. | : | |

### ORDER

Upon consideration of Defendants' Motion to Dismiss Complaint and Memorandum of Points and Authorities In Support of Motion to Dismiss, and Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Complaint, and good cause not having been shown, it is by the Court this ___ day of _____, 2005

ORDERED that the Motion is hereby Denied.

_____
RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE