IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL FRANCO, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE DISTRICT OF COLUMBIA, )<br>NATIONAL CAPITAL REVITALIZATION )<br>CORPORATION and RLA REVITALIZATION )<br>CORPORATION, )<br>)<br>Defendants. ) | 1:05-CV-01058 (RMU) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

**I.   STATUS OF CASE**

On June 27, 2005, the defendants filed a Joint Motion to Dismiss (Doc. # 8), setting forth why plaintiffs' complaint failed to state a claim and why the complaint was, at best, premature.

On July 8, 2005, NCRC filed in the Superior Court a normal condemnation proceeding (not quick-take) concerning the property located at 2838 Alabama Avenue, S.E. See National Capital Revitalization Corporation v. Franco, et al., Case No. 05-5335. The complaint was served on the owner as of July 19, 2005, and the matter is pending before Judge Geoffrey Alprin in that Court. The owner has not yet responded to the condemnation complaint.

On July 15, 2005, the plaintiffs in the case before this Court filed (i) an opposition to the defendants' motion to dismiss (Doc # 11), followed shortly by (ii) an amended complaint (Doc. #12). The opposition to the motion to dismiss sets forth the plaintiffs' responses to defendants' arguments but also purports to address issues raised for the first time in the amended complaint.

In the interests of avoiding duplication of effort and of paper, defendants incorporate by reference here the arguments and authorities cited in their motion to dismiss the original complaint and ask the Court to include in its analysis the points raised therein.[1] The present memorandum addresses only the new issues raised by the filing of the amended complaint and the arguments raised in support of such claims by plaintiffs' opposition to the defendants' earlier motion to dismiss.

**II.    ARGUMENT**

    A.    <u>Impact of Filing of Superior Court Action</u>.

The plaintiffs in this matter are also defendants in a Superior Court proceeding brought by NCRC to acquire the fee of the property through the use of eminent domain. <u>See</u> <u>D.C. Official Code</u>, §2-1219.19(c)(authorizing NCRC to acquire the subject property by eminent domain). Since plaintiffs have a forum in which all of their issues can be heard – from public use challenges to procedural issues to just compensation – the federal court should abstain from proceeding further.

In <u>Aaron v. Target Corp.</u>, 357 F.3d 768 (8th Cir. 2004), the court reversed the district court's decision enjoining the City of St. Louis from proceeding with condemnation proceedings in state court. The Eighth Circuit held that the district court should have abstained when a state proceeding was pending or imminent, even when the owners sought to argue that the taking was for a private, not public, use. The owners had an adequate opportunity to raise their constitutional challenge in state court:

---

[1] In particular, defendants are not reprinting here the arguments advanced earlier regarding the propriety of the enactment of emergency legislation, the inapplicability of the D.C. Environmental Protection Act, and the arguments regarding public purpose, due process, and notice to affected owners regarding potential condemnation.

2

> We conclude that the court erred in finding that the property owners did not have an adequate opportunity to raise their principal claim, that the taking is for a private use, in the state court eminent domain proceedings.
>
> Federal abstention in this case would permit Missouri's condemnation procedures to run their course. Eminent domain is an appropriate tool to help neighborhoods remain economically viable, attract industry, and encourage future growth. *See generally* Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L. Ed. 2d 304 (1994); Thomas Merrill, *The Economics of Public Use*, 72 Cornell L.Rev. 61 (1986). Missouri has adequate judicial procedures for consideration of the parties' competing interests. Land use policy is an area in which federalism principles are particularly strong as we recognized in Night Clubs, Inc. [v. City of Fort Smith, 163 F.3d 475, 479 (8th Cir. 2004].

Plaintiffs here have the opportunity to have their arguments considered by the Superior Court now that an actual eminent domain proceeding has started. This Court should decline plaintiffs' invitation to interfere in that proceeding and, instead, should abstain. See JMM Corp. v. District of Columbia, 378 F.3d 1117, 1126 (D.C. Cir 2004)(Younger abstention applies to federal court's consideration of matters pending before District of Columbia judiciary or administrative bodies; although local case was not filed until after federal case filed, Younger abstention still applied because the federal court had not proceeded on the merits).

    B.          <u>Impact of Kelo</u>

Plaintiffs advised the Court in their Opposition to Defendants' Motion to Dismiss Complaint:

> In light of the distinctions made by the Supreme Court in <u>Kelo</u> between takings for economic development that are constitutional and those takings that are not for a public purpose or public use and that are impermissible *per se*, plaintiffs, prior to filing this response, amended their complaint to present additional claims that the taking authorized by the Skyland Legislation is not for a public purpose or use. Plaintiffs' also amend Count III, and delete Count VII of the complaint.

3

(Doc # 11 at 1-2). But even those modifications do not cure the fatal flaws in plaintiffs' analysis of the public purpose issue. The Supreme Court's analysis in <u>Kelo v. City of New London</u>, 125 S.Ct. 2655 (2005), works in the defendants' favor, not the plaintiffs'.

As this Court recently stated: "While the Supreme Court in *Kelo* did discuss the extensive redevelopment plan in that case, the Court by no means set forth a new test to judge the sufficiency of a redevelopment plan." (<u>Memorandum Opinion</u> (July 19, 2005) in <u>Rumber v. District of Columbia</u> (04-cv-1170), at 6.) However, plaintiffs' Second Amended Complaint adopts the rejected argument that <u>Kelo</u> establishes a new minimum test. Plaintiffs allege that the process whereby a redevelopment plan was proposed was vague and somehow suspect (Second Amended Complaint ¶¶ 17-22), although plaintiffs at the same time concede that the developer for the site was chosen through a competitive process to determine how the developer, working with NCRC, would develop the site. (<u>Id.</u> ¶ 18). Plaintiffs acknowledge, as they must, that there was a legislative process whereby the City Council, repeatedly, reviewed the issue of the redevelopment of Skyland and whether to authorize the use of eminent domain. (<u>Id.</u> ¶¶ 24-36).[2] Plaintiffs allege that the final legislation was enacted in a manner to avoid public notice. (<u>Id.</u> ¶¶ 34, 39). Plaintiffs allege that the Council's conclusion that the Skyland area had blighting conditions was a "wrong" conclusion. (<u>Id.</u> ¶ 36, also describing the Council's findings as "inaccurate," "baseless," and "substantially irrelevant").

What plaintiffs cannot allege is that the public purposes stated by the Council as being served by the exercise of eminent domain are improper public purposes. Economic redevelopment is an appropriate and constitutionally-permissible public purpose. <u>Kelo</u>, 125 S.Ct at 2665. Removal of slum and blight conditions is also an appropriate and constitutionally-

---

[2] While not determinative, defendants would note that each Council action on each aspect of the Skyland legislation – emergency, temporary, and permanent acts, as well as funding support – has been enacted unanimously.

4

permissible public purpose. Berman v. Parker, 348 U.S. 26 (1954). The Skyland project is intended to advance both public purposes and the City Council has so found. The method by which the Council advances those public purposes is a legislative, not judicial, issue, so long as just compensation is paid for any property taken by eminent domain.

Everyone agrees that a one-to-one transfer of property from one owner to another for the purpose of advancing the private interests of the transferee is impermissible. See Kelo, 125 S.Ct at 2661 ("it has long been accepted that the sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B*, even though *A* is paid just compensation"). But plaintiffs' own allegations belie the argument that that is what has occurred at Skyland. Far from making a "plausible accusation of impermissible favoritism to private parties," Kelo, 125 S.Ct at 2669 (Kennedy, J., concurring), plaintiffs here allege that there was a competitive selection process prior to the development of a plan for Skyland. Plaintiffs acknowledge that the redevelopment effort was spurred by community activists, neighbors and by NCRC, see, e.g. Second Amended Complaint ¶ 17, not by a particular developer or even the eventual tenants of the redeveloped site. Indeed, while defendants dispute this characterization, plaintiffs allege that the redevelopment plan is not proceeding as it should and that there have been funding gaps, missed opportunities, and a lack of follow-through on promised development. (Second Amended Complaint ¶¶ 70, 72). This hardly paints the picture of a project where the skids are being greased in favor of a particular developer or tenant.

To the contrary, it is clear even from plaintiffs' own allegations, that the Skyland project had at its inception and has at its core the public benefits associated with economic redevelopment for Ward 7, removing conditions of blight and delapidation, and bettering the community. Plaintiffs simply cannot squeeze this case into the pigeonhole of an impermissible

5

private transfer because that it is not what Skyland represents. The Second Amended Complaint is not salvaged by plaintiffs' efforts to turn Skyland into one of the "hypothetical cases" where a purely "private purpose was afoot." Kelo, 125 S.Ct at 2666-67.

### III.   CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). The Court should abstain from proceeding and the amendment to the Complaint does not create a claim upon which the Court can grant relief.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

CHARLES F. BARBERA
Deputy Attorney General, Commercial Division

/s/
DAVID FISHER (D.C. Bar # 325274)
Chief, Tax, Bankruptcy, and Finance Section

/s/
RICHARD G. AMATO  (D.C. Bar # 21618)
richard.amato@dc.gov
Assistant Attorney General
441 4th Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 724-7751
(202) 727-6014 (fax)

HOLLAND & KNIGHT LLP

_____
Paul J. Kiernan (D.C. Bar # 385627)
paul.kiernan@hklaw.com
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000 – phone
(202) 955-5564 – fax

# 3101238_v1