UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SAMUEL FRANCO *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 05-1058 (RMU) |
| | : | | |
| v. | : | Document No.: | 18 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.,* | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

DENYING THE PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT[1]

## I.  INTRODUCTION

The plaintiffs,[2] leaseholders of property in Skyland Shopping Center in the District of Columbia, challenge legislation authorizing the defendants to exercise eminent domain over their property. The court previously granted the defendants' motion to dismiss, concluding that the plaintiffs' claims were not ripe. Specifically, the court ruled that no taking had occurred and that the plaintiffs had not exhausted state procedures for seeking relief. The matter is before the court on the plaintiffs' motion to alter or amend its judgment. As to the first prong of the court's ruling, the plaintiffs now assert, and the defendants concede, that during the pendency of this case, defendant National Capital Revitalization Corporation ("NCRC") exercised a taking of the plaintiffs' leasehold interest. As to the second prong, the plaintiffs assert that the court

---

[1]  The plaintiffs fail to bring their "motion to reconsider" pursuant to a particular rule. Because they filed their motion within 10 days of the court's order of dismissal, the court construes their motion as one to alter or amend judgment under Federal Rule of Civil Procedure 59(e).  *Zyko v. Dept. of Defense*, 180 F. Supp. 2d 89, 90-91 (D.D.C. 2001).

[2]  The plaintiffs bringing this motion are Nathan Franco, Allen Franco and D. Mart.

improperly concluded that they must exhaust state court remedies because the taking was facially unconstitutional and because they seek equitable relief and monetary damages rather than compensation. Although the defendants properly exercised a public-use taking of the plaintiffs' leasehold interests, the plaintiffs have not exhausted state court remedies, and their claims are still not ripe. Accordingly, the court did not commit a clear legal error in dismissing the plaintiffs' claims, and the court declines to alter or amend its judgment.

## II.   BACKGROUND[3]

### A.   Factual History

The plaintiffs are tenants of property located in the Skyland Shopping Center ("Skyland Center") in Southeast Washington, D.C. Am. Compl. ¶ 2. In 2004, deeming the condemnation of the Skyland area "necessary and desirable for the public," the District of Columbia Council passed the "Skyland Legislation," authorizing defendant NCRC to condemn property in the Skyland Center. D.C. Code § 2-1219.19.

### B.   Procedural History

On May 26, 2005, the plaintiffs filed suit to challenge the legislation authorizing defendant NCRC to exercise eminent domain on the Skyland Center. *See* Compl. On March 22, 2006, the court dismissed the plaintiffs' amended complaint because their claims were not ripe. Mem. Op. (Mar. 27, 2006) ("Mem. Op.") at 15. On April 5, 2006, the plaintiffs filed a motion to alter or amend the court's order on the grounds that defendant NCRC initiated eminent domain

---

[3] For a more thorough recitation of the factual and procedural history of the case, see the court's March 22, 2006 memorandum opinion.

proceedings against the Skyland Center in July 2005, and that the court erred in ruling that the plaintiffs were required to exhaust state procedures.  Pls.' Mot. at 2.  The defendants oppose the plaintiffs' motion, arguing that the plaintiffs must still exhaust state court procedures, and that the plaintiffs' claims are otherwise not properly before the court.  Defs.' Opp'n at 2.  The court now turns to the plaintiffs' motion.

### III.    ANALYSIS

**A.    Legal Standard for a Motion to Alter or Amend Judgment Pursuant to Rule 59(e)**

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within 10 days of the entry of the judgment at issue.  FED. R. CIV. P. 59(e); *see also Mashpee Wamponoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1098 (D.C. Cir. 2003) (stating that a Rule 59(e) motion "must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and New Year's Day), or any other day appointed as a holiday by the President").  While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).  Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice."  *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208).  Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled,"

*New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting theories or arguments that could have been advanced earlier. *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

    **B.    The Court's Dismissal of the Plaintiffs' Claims is Not in Clear Legal Error**[4]

In its March 27, 2006 ruling, the court dismissed the plaintiffs' claims as not ripe because a public use taking had not occurred and the plaintiffs had not sought just compensation in state court. *Id*. at 13. The plaintiffs now challenge the court's ruling, arguing that the defendants did not effect a public use taking and that they need not seek compensation in state court before bringing suit in this court. *See generally id*.

The plaintiffs argue that because defendant NCRC exercised a taking of the disputed property, the court must amend its ruling that the plaintiffs' claims are not ripe. Pls.' Mot. at 2. They also make two arguments claiming that the court improperly required them to seek compensation in state court proceedings. First, the plaintiffs assert that they need not exhaust state remedies before pursuing their claims in federal court because they seek equitable relief and because they allege that the taking was for private use. *Id*. at 5-6. Second, the plaintiffs assert that they should be exempted from seeking relief in state court because their leases preclude their recovery of any condemnation award. *Id*. at 5. The defendants counter that the plaintiffs merely

---

[4]     The plaintiffs did not specify the grounds provided by Rule 59(e) on which they challenge the court's March 27, 2006 ruling. Because the substance of their motion addresses the court's legal conclusions, the court presumes that the plaintiffs move the court to correct clear legal error.

repeat the arguments set forth in their complaint, and that the state court is an appropriate forum to address the plaintiffs' claims. Defs.' Opp'n at 2.

For a Fifth Amendment challenge to be ripe for federal court intervention, either the taking must be facially unconstitutional, *i.e.* not for a public purpose, or the state must have failed to provide just compensation after a public-purpose taking. U.S. Const. amend. V (stating that the state shall not take private property "for public use, without just compensation"). Because the court reviews its holding for clear legal error, *Ciralsky*, 355 F.3d at 671 (quoting *Firestone*, 76 F.3d at 1208), it will first look to the nature of the taking to determine whether it correctly concluded that it was for a public purpose. Second, it will examine whether the plaintiffs must exhaust their state remedies.

### 1. The Defendants Exercised a Public Use Taking

The plaintiffs argue that the court committed a clear legal error because the taking was for a private purpose, and, as a result, it does not constitute a public use taking. Pls.' Mot. at 2-5. In support of their contention, the plaintiffs maintain that the Skyland Legislation "contains false and pretextual findings" purporting to justify it as a taking for public use. *Id*. at 7. The defendants maintain that the taking at issue "had at its inception and has at its core the public benefits associated with economic redevelopment [such as] removing conditions of blight and dilapidation, and bettering the community." Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Defs.' Mot.") at 5.

Courts have long given great deference to legislative judgment in deciding whether or not a taking satisfies the public use requirement of the Fifth Amendment. *Kelo v. City of New London, Conn*., 125 S. Ct. 2655, 2663 (2005) (stating that "[w]ithout exception, our cases have

defined [the concept of public purpose] broadly, reflecting our longstanding policy of deference to legislative judgments in this field"). A court should accept the stated public purpose of the condemnation offered by the legislature unless it concludes that it is "palpably without reasonable foundation." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 241 (1984) (quoting *United States v. Gettysburg Elec. Ry. Co.*, 160 U.S. 668, 680 (1896)). Although courts rarely conclude that a taking does not meet the public use standard, *Montgomery v. Carter County, Tenn.*, 226 F.3d 758, 765-66 (6th Cir. 2000), courts need not defer to the legislature "where the ostensible public use is demonstrably pretextual." *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123, 1129 (C.D. Cal. 2001) (citing *Armendariz v. Penman*, 75 F.3d 1311, 1321 (9th Cir. 1996)).

      The plaintiffs claim that the defendants' findings of blight and dilapidation are a pretext to mask a private transaction between defendant NCRC and an independent developer. Pls.' Opp'n to Defs.' Mot. at 10. The plaintiffs further allege that there were no slum or blight studies conducted prior to the enactment of the Skyland Legislation, and that the blight findings cited by the defendants were added after the public hearing. *Id.* Contrary to the plaintiffs' assertions, the transfer of property to private developers is immaterial to whether a taking is constitutional, *Midkiff*, 467 U.S. at 243-44, and a court will not recognize a taking as unconstitutional without evidence that the taking was strictly for a private purpose, *Montgomery*, 226 F.3d at 765-66; *see also 99 Cents Only Stores*, 237 F. Supp. 2d at 1129 (recognizing an unconstitutional taking when the defendant admitted that the only justification for the taking was to satisfy the expansion demands of a private company, and the defendant could not contend that the property at issue was blighted).

Moreover, the defendants have sufficiently argued that the taking was for public use. They allege that the Skyland area is blighted, underutilized, and crime-ridden. Defs.' Mot. to Dismiss Pls.' Compl.[5] at 4. According to the defendants, the area suffers from high unemployment rates, and the defendants contend that the redeveloped area will create new jobs and tax revenues for the District. *Id.* at 6. "When the legislature's purpose is legitimate and its means are not irrational . . . empirical debates over the wisdom of takings – no less than debates over the wisdom of other kinds of socioeconomic legislation – are not to be carried out in the federal courts." *Midkiff*, 467 U.S. at 242-43. Promoting economic development and removing blighted conditions are recognized public purposes, *Kelo v. City of New London*, 125 S. Ct. 2655, 2665 (2005), and therefore, the defendants have sufficiently shown that the Skyland Legislation serves a "conceivable public purpose." *Midkiff*, 467 U.S. at 241.

Because the taking was for a public use, and was not facially unconstitutional, the plaintiffs must first pursue state remedies for uncompensated takings before seeking relief in federal court. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985); *see also Daniel v. County of Santa Barbara*, 288 F.3d 375, 382 (9th Cir. 2002) (applying the exhaustion requirements of *Williamson County* to physical takings). The court, therefore, considers whether the plaintiffs have exhausted state court procedures.

### 2. The Plaintiffs Have Not Exhausted State Court Remedies

The court's ruling also stated that the plaintiffs' claims were not ripe because they had not exhausted their state court remedies. Mem. Op. at 13 (citing *Patel v. City of Chicago*, 383 F.3d

---

[5] The defendants' motion to dismiss the plaintiffs' amended complaint incorporates by reference the defendants' motion to dismiss the complaint. Defs.' Mot. to Dismiss Pls.' Am. Compl. at 2.

569, 574 (7th Cir. 2004)). The plaintiffs challenge this ruling on the grounds that they need not exhaust their state remedies because they challenge the taking as facially unconstitutional, and that their claims are ripe regardless of whether they receive compensation. Pls.' Mot. at 2. According to the plaintiffs, just compensation is irrelevant to this case. *Id*. at 2, 4, 5. The defendants counter that because the legislation is not unconstitutional, the plaintiffs must still exhaust their state remedies. Defs.' Opp'n at 2-3. The court agrees.

### a. Because the Taking was for a Public Purpose, the Plaintiffs Must Exhaust State Remedies

In its ruling, the court held that the plaintiffs' claims would only be ripe if the plaintiffs suffer an injury, which could only occur if the state failed to justly compensate them for their loss of property. Mem. Op. at 13 (relying on *Patel v. City of Chicago*, 383 F.3d 569 (7th Cir. 2004)). The plaintiffs challenge this ruling, arguing that the court's reliance on *Patel* is misplaced because they bring due process and state law challenges to the defendants' taking of the disputed property, not merely Fifth Amendment challenges. Am. Compl. ¶¶ 67-93.

According to *Patel*, plaintiffs presenting "*bona fide* equal protection claims arising from land-use decisions" are not bound by the ripeness requirement. *Patel*, 383 F.3d at 573 (emphasis in original) (quoting *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000)). Contrary to the plaintiffs' assertion, however, ripeness requirements apply "with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim." *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961-62 (7th Cir. 2004) (explaining that plaintiffs must pursue either takings challenges or due process claims in state court prior to bringing a federal action); *See also Daniel*, 288 F.3d at 382. The plaintiffs base their due process claims on

the same facts as their takings claims. Specifically, the plaintiffs allege that the defendants violated their due process rights by exercising a private-purpose taking and failing to follow the procedures required by the Skyland Act. Am. Compl. ¶¶ 67-73. Quite simply, state procedural requirements apply to the plaintiffs' due process claims. *Patel*, 383 F.3d at 574 (citing *Williamson County*, 473 U.S. at 194); *Ruckelshaus*, 467 U.S. at 1016 (stating that plaintiffs may not seek to enjoin a public-use taking when they are able to seek just compensation).

### b. The Plaintiffs Have Not Proven that State Remedies are Unavailable or That it is Futile to Seek State Remedies

In its ruling, the court stated that "the plaintiffs have asserted no reason why they would be harmed by raising claims in state court." Mem. Op. at 15. The plaintiffs now respond, arguing that their lease contains a condemnation clause providing for termination of the lease in the case of condemnation, and, therefore, the state court can provide them with no relief. Pls.' Mot. at 5-6. As a result, they assert that the federal court is their only forum for relief.

Courts recognize two limited exceptions to the exhaustion requirements, and it is the plaintiffs' burden to show that one of the exceptions applies. *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 92 (1st Cir. 2003) (applying the exhaustion exceptions of *Williamson County* to physical takings and explaining that the plaintiff bears the burden to prove that its claims fall within an exception). First, plaintiffs can bring their claims in federal court if no state remedies exist. *Id*. at 92 (citing *Daniel*, 306 F.3d at 456-57). This exception applies when state law does not recognize the taking that occurred. *Pascoag*, 337 F.3d at 92. Although the plaintiffs assert that they "have no adequate or available state remedies," Am. Compl. ¶ 59, they

offer no argument that state remedies are unavailable or inadequate. Therefore, they have not sufficiently pled that this exception applies. *Pascoag*, 337 F.3d at 92.

Second, plaintiffs may argue that exhaustion is futile. *Id*. at 93. The futility exception, however, is very narrow. *See id.* at 94-95 (rejecting a futility argument because the plaintiff's claims were barred by the statute of limitations). The plaintiffs argue, in essence, that it is futile for them to pursue their state court remedies because their lease states that they have no right to any condemnation award. Pls.' Mot. at 5-6.

Contract provisions concerning condemnation awards are generally binding. *Penn. Ave. Dev. Corp. v. One Parcel of Land*, 494 F. Supp. 45, 48 (D.D.C. 1980) (explaining that a "condemnation clause" acts to bar a lessee from receiving a share of a condemnation award) (citing *United States v. Petty Motor Co.*, 327 U.S. 372, 376 (1946) (stating that when a tenant contracted away any rights it would have otherwise had in a condemnation proceeding, absent a contrary state rule, "the tenant has no right which persists beyond the taking and can be entitled to nothing")). The plaintiffs, however, neglect to recognize that their lease provision entitles them to reimbursement from the "condemning authority" for fixtures on the property as well as moving expenses. Pls.' Mot. at 5-6. Therefore, although the plaintiffs may have forfeited their right to a condemnation award, they are entitled to other remedies for the taking. What's more, the plaintiffs have not argued that the lease provision is absolutely binding. Despite the presence of a clause in the plaintiffs' lease, some courts read condemnation clauses narrowly so as not to completely deprive plaintiffs of compensation. *Penn. Ave. Dev. Corp. v. One Parcel of Land in the Dist. of Columbia*, 670 F.2d 289, 292 (D.C. Cir. 1981) (stating that courts look with disfavor

on clauses resulting in the forfeiture of the lessee's entire interest and seek to construe them to avoid a "harsh effect"); *see also Burkhart v. United States*, 227 F.2d 659, 662 (9th Cir. 1955).

Accordingly, the plaintiffs' conclusory argument that their lease provision precludes all potential recovery fails to demonstrate that the futility exception applies to their claims. *Pascoag*, 337 F.3d at 92. As a result, they are not relieved of their obligation to pursue their

claims in state court.[6]  *Gilbert v. City of Cambridge*, 932 F.2d 51, 63 (1st Cir. 1991) (stating that plaintiffs must resort to state condemnation procedures "so long as the State provides an adequate process for obtaining compensation, and resort to that process holds out some realistic promise of yielding just compensation").  Because the plaintiffs have not exhausted state court

---

[6] The court recognizes the catch-22 inherent in requiring parties to exhaust state court remedies for compensation prior to bringing a challenge in federal court.  That is, state law may require a litigant pursuing state court remedies to raise those federal claims related to the taking (*e.g.* facial constitutionality, just compensation) in the state court proceedings.  Through operation of res judicata and collateral estoppel, that litigant may then be procedurally barred from bringing his claims in federal court.  *Claude-Chambers v. City of West Haven*, 427 F. Supp. 2d 76, 80-82 (D. Conn. 2006).  To remedy this jurisdictional obstacle, the Eleventh Circuit allows litigants to preserve their right to bring a subsequent constitutional challenge in federal court (preclusion notwithstanding) by making "on the state record a reservation as to the disposition of the entire case by the state courts to preserve access to a federal forum."  *Bauknight v. Monroe County*, 446 F.3d 1327, 1330-31 (11th Cir. 2006) (quoting *Jennings v. Caddo Parish Sch. Bd.*, 531 F.2d 1331, 1332 (5th Cir. 1976)).  This provides litigants a mechanism to satisfy exhaustion requirements while preserving their right to bring federal claims to the federal court for review.  *Bauknight*, 446 F.3d at 1330-31.

The Eleventh Circuits' approach, however, is not without its problems.  First, allowing a party to "preserve" a constitutional challenge to a taking transforms the federal district courts into an appellate review body of state court decisions on federal claims.  By transforming the federal district courts into a *de facto* appellate review tribunal, this approach fails to recognize that "federal and state courts are complementary systems for administering justice in our Nation.  Cooperation and comity, not competition and conflict, are essential to the federal design."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999).  Second, state courts are fully competent to resolve matters of constitutional law.  *Moore v. Sims*, 442 U.S. 415, 430 (1979) (stating that the Court has "repeatedly and emphatically rejected" the argument that state courts are not competent to adjudicate federal constitutional claims); *Stone v. Powell*, 428 U.S. 465, 494 (1976) (explaining that "state courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law").  Third, permitting federal court review of state court awards of compensation for takings denies full faith and credit to state court rulings in federal courts.  *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 338 (2005) (stating that "Congress has not expressed any intent to exempt from the full faith and credit statute federal takings claims" and applying the "normal assumption that the weighty interests in finality and comity trump the interest in giving losing litigants access to an additional appellate tribunal").

remedies and because their state court claims are not futile, the court did not commit clear legal error in dismissing the case.

## IV.    CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion to alter or amend its judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of October, 2006.

                                                                       RICARDO M. URBINA
                                                                United States District Judge